JP59-100250
JP59-100251
JP59-100252
Filed: 05/18/84

DIV — DIV — CON

Appl. No. 733,697
Filed: 05/20/85

CON (62)

Appl. No. 153,477 Filed: 02/03/88
Pat. No. 4,959,200 Issued: 09/25/90

DIV — CON

Appl. No. 987,179 Filed: 12/08/92
Pat. No. 5,315,132 Issued: 05/24/94

DIV

Appl. No. 214,494
Filed: 03/18/94

CON (62)

Appl. No. 425,455
Filed: 04/20/95

DIV

Appl. No. 473,953 Filed: 06/07/95
Pat. No. 5,543,636 Issued: 08/06/96

Appl. No. 520,756
Filed: 05/09/90

DIV — CON (62)

Appl. No. 687,745
Filed: 04/19/91

Appl. No. 707,178 Filed: 05/24/91
Pat. No. 5,142,344 Issued: 08/25/92

DIV — CON (62)

Appl. No. 885,643
Filed: 05/19/92

Appl. No. 054,842 Filed: 04/30/93
Pat. No. 5,313,077 Issued: 05/17/94

Lonnie WEEKS, Jr., Petitioner,

v.

Ronald J. ANGELONE, Director
of the Virginia Department of
Corrections, Respondent.

Action No. 2:96CV829.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 1, 1998.

Order Denying Motion to Amend
Judgment, June 19, 1998.

Glen A. Huff, Timothy M. Richardson, Huff, Poole & Mahoney, P.C., Virginia Beach, VA, Sterling H. Weaver, Sr., Portsmouth, VA, Michele Jill Brace, Robert Edward Lee, Jr., Mark E. Olive, Richmond, VA, for Petitioner.

Robert H. Anderson, III, Assistant Attorney General, Richmond, VA, for Respondent.

### OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter was initiated on February 7, 1997, by petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted for the capital murder of Virginia State Trooper Jose Cavazos, and was sentenced to death on January 14, 1994.[1] The petition alleges violations of federal rights pertaining to petitioner's conviction and sentencing in the Circuit Court of Prince William County, Virginia. Specifically, Weeks attacks the validity of his conviction and sentence on thirty-four (34) separate grounds.

The matter was referred to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 29 of the Rules of the United States District Court for the Eastern District of Virginia for report and recommendation. The Magistrate Judge's Report and Recommendation (R & R) was filed on July 30, 1997, recommending that the petition be denied and dismissed.

By copy of the report, each party was advised of his right to file written objections to the findings and recommendations made by the Magistrate Judge. On August 18, 1997, this court received "Petitioner's Objec-

---

1. The Magistrate Judge's Report and Recommendation (R & R) contains a detailed statement of facts, which this court adopts.

tions to United States Magistrate Judge's Report and Recommendation," and respondent's "Objections to Magistrate Judge's Report and Recommendation." The parties' respective responses to the objections were both filed on September 5, 1997.

Petitioner objects to each of the Magistrate Judge's, recommendations to deny the individual claims presented in the Petition for a Writ of Habeas Corpus. However, of the claims on which the merits were reached, Weeks relies most heavily on Claims I, V, X, XVIII, XX, XXVI, XXVII, XXVIII, and XXIX. Petitioner maintains that these claims entitle him to conduct discovery, present evidence, and ultimately receive a Writ of Habeas Corpus. Respondent does not contest the ultimate recommendation of the Magistrate Judge, but does object to some specific rulings within the R & R. Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, shall make a *de novo* determination of those portions of the Magistrate Judge's R & R to which petitioner and respondent have specifically objected.[2] The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

In addition, there is an outstanding objection to the Magistrate Judge's January 23, 1997, Opinion and Order denying Weeks' request for expert assistance. This court will also review that decision and the corresponding objection. *See infra* part III.A.

### Discussion

### I. Preliminary Objections

Two of respondent's objections do not go to the Magistrate Judge's analysis of any particular claim, but to underlying findings that affect the standard of review used throughout the R & R. First, respondent objects to the Magistrate Judge's finding that Virginia does not satisfy the "opt-in"

requirements in Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Respondent also objects to the Magistrate Judge's determination that petitioner's defaulted allegations are potentially reviewable under the "actual innocence" doctrine.

### A. "Opt–In" Requirements

█ With respect to the first objection, this court, by order dated November 21, 1996, affirmed this very finding by the Magistrate Judge.[3] Therefore, this court will treat respondent's objection as a motion to reconsider. For the following reasons, the court upholds its earlier decision and finds that Virginia does not meet the "opt-in" requirements of the AEDPA.

The AEDPA, which became effective on April 24, 1996, makes significant changes to the law of federal habeas corpus review, including creating a new Chapter 154 of Title 28 of the United States Code. Sections 101 through 106 apply generally to all federal habeas petitions. However, § 107 of the Act, which creates Chapter 154, applies specifically to petitions filed in capital cases. In addition to providing for expedited review, Chapter 154 affects habeas petitions in death penalty cases by narrowing the issues cognizable on federal habeas and by requiring federal courts to give even greater deference to state courts, prior resolution of issues presented in these petitions. *See* § 107(a).

Section 107 specifically states that it "shall apply to cases pending on or after the date of enactment of this Act." § 107(c). However, § 107 provisions, providing greater deference to state proceedings, are applicable only if the state meets the "opt-in" requirements set forth in § 107. To qualify for habeas benefits under the "post-conviction" prong of the "opt-in" provisions, a state must establish a mechanism that provides for the appointment, compensation, and reimbursement of competent counsel for all indigent capital de-

---

**2.** The court will generally follow the organization of the Magistrate Judge's R & R, discussing only those portions to which there are objections.

**3.** Respondent made this same objection on November 4, 1996, in relation to the filing schedule ordered by the Magistrate Judge. The schedule

was not pursuant to the "opt-in" provisions, which require expedited review for qualifying states. This court's November 21, 1996, order was a summary order holding that Virginia does not satisfy the "opt-in" requirements of the Act.

fendants in its state post-conviction proceedings.[4] In other words, § 107 creates a "quid pro quo arrangement under which States are accorded stronger finality rules on federal habeas corpus review in return for strengthening the right to counsel for indigent capital defendants." *Satcher v. Netherland,* 944 F.Supp. 1222, 1238 (E.D.Va.1996) (quoting H.R.Rep. No. 23, 104th Cong., 1st Sess. 10 (1995)), *rev'd in part on other grounds sub nom. Satcher v. Pruett,* 126 F.3d 561 (4th Cir.), *and cert. denied,* —— U.S. ——, 118 S.Ct. 595, 139 L.Ed.2d 431 (1997).

Specifically, in order to "opt-in" a state must meet all four of the following criteria:

1. The State must establish by statute, rule of its court of last resort, or other agency authorized by state law a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in state post-conviction proceedings brought by indigent capital defendants. *See* § 2261(b).

2. Such mechanism must provide standards of competency for the appointment of such counsel. *See* § 2261(b).

3. Such mechanism must affirmatively offer counsel to all state prisoners under capital sentence. *See* § 2261(c).

4. Such mechanism must provide for the entry of a court order either appointing counsel to each indigent capital defendant, or explaining that such an appointment was not made on the basis that a defendant was not indigent or rejected the offer of counsel with an understanding of the legal consequences. *See* § 2261(c).

Although not always for identical reasons, other judges in this district have recently held that the Commonwealth of Virginia does not meet the qualifications of Chapter 154 of the AEDPA. *Wright v. Angelone,* 944 F.Supp. 460 (E.D.Va.1996) *see also Breard v. Netherland,* 949 F.Supp. 1255, 1261–62 (E.D.Va.1996), *aff'd sub nom. Breard v. Pruett,* 134 F.3d 615 (4th Cir.1998); *Satcher v. Netherland,* 944 F.Supp. 1222, 1238 (E.D.Va.1996). Virginia does clearly meet the third and fourth requirements, as applied in this case. As of July 1, 1995, the appointment of counsel in the post-conviction process became automatic.[5] Counsel was appointed for Weeks on October 10, 1995, and his state habeas proceedings became final on March 15, 1996. Accordingly, the state was in compliance with the third and fourth requirements of the "opt-in" provisions, using either date as the measuring point.[6]

However, Virginia has failed to meet the first "opt-in" requirement. Virginia fails to meet the requirement of a comprehensive mechanism for the appointment, compensation, and payment of reasonable litigation expenses for counsel. *See Bennett v. Angelone,* 92 F.3d 1336, 1342 (4th Cir.1996) ("the Virginia statutes and regulations do not specifically provide for compensation or payment of litigation expenses of appointed counsel, as § 107 requires"); *see also Satcher,* 944 F.Supp. at 1241–42 (for detailed discussions of why Virginia fails to meet the compensation requirement); *Wright,* 944 F.Supp. at

---

**4.** 28 U.S.C. § 2261. Virginia could also benefit from the special provisions if they qualify under another "opt-in" prong, which provides for "unitary review" procedures under § 2265. A unitary review procedure allows a person under a sentence of death to raise on direct review of the judgment such claims as could be raised on collateral attack. 28 U.S.C. § 2265. Virginia does not have such a procedure and therefore the provision does not apply. *See also Wright v. Angelone,* 944 F.Supp. 460, 462 (E.D.Va.1996).

**5.** Between July 1, 1992, and June 30, 1995, the appointment of counsel was made only upon request by the petitioner. Va.Code § 19.2–163.7 (prior to 1995 amendment). The *Satcher* and *Wright* courts both held that Virginia had not satisfied the third and fourth "opt-in" requirements in time to apply in those cases. *Satcher,* 944 F.Supp. at 1243–44; *Wright,* 944 F.Supp. at 463.

**6.** In *Wright,* the court held that the date of appointment is the appropriate date by which to judge the sufficiency of the state system. 944 F.Supp. at 463. However, in *Satcher,* the court judged Virginia's system as of the date petitioner's habeas petition was finally denied. 944 F.Supp. at 1243 (following dictum in *Bennett v. Angelone,* 92 F.3d 1336, 1342 (4th Cir.)), *cert. denied,* —— U.S. ——, 117 S.Ct. 503, 136 L.Ed.2d 395 (1996). This court need not decide which is the better measuring event, as Virginia clearly is in compliance with the third and fourth "opt-in" requirements, using either of dates that are possibly applicable to Weeks.

464–65 (same). As Judge Payne held in *Satcher,* this requirement could only be satisfied by strict, rather than substantial compliance. *Satcher,* 944 F.Supp. at 1242. There has been no change in Virginia law, since the *Satcher* and *Wright* decisions, that would require a different outcome. Thus, the Commonwealth is not entitled to the special review that may be granted some states for their capital cases under Chapter 154.[7]

The other provisions in the AEDPA clearly do apply in this case, as the petition was filed well after April 24, 1996, the enactment date of the Act.

### B. Actual Innocence Doctrine

■ The Magistrate Judge examined Weeks' petition to determine if his procedurally defaulted ineffective assistance claims were reviewable under the "fundamental miscarriage of justice," or "actual innocence," doctrine. R & R at 27–31. The Magistrate Judge ultimately held that Weeks could not meet the required burden of proof, and thus his procedurally defaulted claims were not reviewable. *Id.* Respondent argues that the Magistrate Judge erred in even applying the "actual innocence" doctrine in petitioner's case. According to respondent, both 28 U.S.C. § 2264(a) and 28 U.S.C. § 2254(e)(2) dispense with any concept of "actual innocence of the death penalty."

Prior to passage of the AEDPA in 1996, the law was clear on the reviewability of procedurally defaulted claims. Generally, this court may not review claims that have been clearly and expressly defaulted under an independent and adequate state procedural rule. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A state procedural default bars federal habeas corpus review of the claim, unless petitioner can show both justifiable *cause* for, and actual *prejudice* resulting from, his default. *Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes,* 433 U.S. 72, 87–88, 97 S.Ct. 2497, 53

L.Ed.2d 594 (1977). If a petitioner cannot show "cause" and "prejudice" sufficient to excuse a procedural default, his claims may still be reviewed where refusal would result in a "fundamental miscarriage of justice." *Schlup v. Delo,* 513 U.S. 298, 314–15, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Under this doctrine, if a constitutional violation has probably resulted in the conviction of someone who is actually innocent, the writ may be granted. *Schlup,* 513 U.S. at 323, 115 S.Ct. 851. To show "actual innocence of the death penalty," a petitioner must show "by clear and convincing evidence that but for constitutional error, no reasonable juror would find him eligible for the death penalty under [the applicable state law]." *Sawyer v. Whitley,* 505 U.S. 333, 347, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). It is only after meeting this very difficult burden that a petitioner may actually have his defaulted claims of constitutional error reviewed.

According to respondent, the "actual innocence of the death penalty" doctrine no longer provides a gateway for petitioners to have their defaulted claims reviewed on habeas. In support of this position, respondent first points to 28 U.S.C. § 2264(a). The statute provides, in pertinent part:

> (a) ... the district court shall only consider a claim or claims that have been raised and decided on the merits in the State courts, unless the failure to raise the claim properly is
>
> > (1) the result of State action in violation of the Constitution or laws of the United States;
> >
> > (2) the result of the Supreme Court's recognition of a new Federal right that is made retroactively applicable; or
> >
> > (3) based on a factual predicate that could not have been discovered through the exercise of due diligence in time to present the claim....

28 U.S.C. § 2264(a).

Section 2264(a) does seem to strictly limit the circumstances under which a defaulted

---

7. Since Virginia fails to satisfy the first requirement it is not necessary to determine whether the state satisfies the second requirement of establishing sufficient standards of competency for appointed counsel. *See Wright,* 944 F.Supp. at

466–67 (holding that Virginia fails to meet this requirement); *but see Satcher,* 944 F.Supp. at 1242–43 (holding that Virginia does meet the requirement for providing standards of competency).

claim may be reviewed by a federal district court.[8] However, § 2264 only applies once a state has qualified under Chapter 154 as an "opt-in" state. Because Virginia is not an "opt-in" state, § 2264(a) does not apply to Weeks' petition. *See supra* part I.A.

Respondent next points to 28 U.S.C. § 2254(e)(2)(B) in support of the Commonwealth's argument that the "actual innocence of death penalty" gateway is no longer available to petitioners seeking a review of their defaulted claims. Section 2254(e) provides:

(1) [In a habeas corpus proceeding] a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Section 2254(e)(2) does limit the circumstances under which a court may order an evidentiary hearing to develop facts underlying a claim made by a petitioner. On its face, however, the provision does not speak to the issue of when a federal court may consider a *claim* that has been procedurally defaulted. Instead, the section only governs when a defendant has failed to develop facts underlying a particular claim. In such a situation, the defendant may or may not have failed to raise the related claim. The question of whether a defendant has previously raised a constitutional claim is clearly a separate issue from whether he has previously introduced certain evidence.

The state does not, however, argue that § 2254(e)(2) directly overrules or changes the applicable standard for deciding when a defaulted claim may be reviewed. Instead, the state's argument seems to be that, as a practical matter, § 2254(e)(2)(B) necessarily dispenses with the concept of actual innocence of the death penalty, since actual innocence of the *underlying offense* is the required showing for an evidentiary hearing.

It is true that, if a petitioner can only show innocence of the death penalty, and not of the actual crime, he may not be entitled to develop facts in an evidentiary hearing.[9] Accordingly, a petitioner could, for all practical purposes, be prevented from presenting a defaulted claim, even though he technically meets the miscarriage of justice standard. However, this will only be true when a hearing is needed to develop the facts underlying the raised claim. A claim may or may not have an underlying factual basis that needs further developing. If a petitioner does not

---

8. It is not clear to this court whether Congress's intention in writing 2264(a) was to completely eliminate the "actual innocence" exception in capital cases, or merely to strictly limit what could be considered "cause" under the cause and prejudice exception. In the past, the Supreme Court held that the miscarriage of justice exception would still allow successive claims to be heard even though the language, from which the exception developed, was removed from the relevant statute, 28 U.S.C. § 2244(b). *Sawyer,* 505 U.S. at 339, 112 S.Ct. 2514 (reciting the history of the "actual innocence" exception). Because § 2264(a) does not apply here, this court offers no opinion on the provision's precise effect.

9. The actual effect of 2254(e)(2)(B) on capital cases is not entirely clear. *See Cardwell v. Netherland,* 971 F.Supp. 997, 1009 (E.D.Va.1997) ("It is unresolved in this circuit whether the 'innocence' requirement of § 2254(e)(2)(B) requires a petitioner facing the death penalty to demonstrate innocence of the crime of which he was convicted or merely 'innocence of the death penalty.'"). For the purpose of this discussion, this court will assume that the state is correct, and that only a showing of actual innocence of the crime will satisfy the requirements for obtaining an evidentiary hearing.

need to introduce any evidence, or further develop any facts to advance his constitutional claim, then § 2254(e)(2) would not be applicable.

For instance, the claim of actual innocence of the death penalty may rely not on new facts, but rather on an error that allowed the introduction of erroneous information. It may be possible to show that, without such facts, no reasonable fact finder would have found the petitioner eligible for the death penalty. The Supreme Court has suggested that such an error would be a possible way to meet the actual innocence of the death penalty standard. *Smith v. Murray*, 477 U.S. 527, 538, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (holding that the habeas petitioner failed to show actual innocence of the death penalty because the "alleged constitutional error neither precluded the development of true facts nor *resulted in the admission of false ones.*"); *see also Sawyer v. Whitley*, 505 U.S. 333, 340, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (citing same passage in explaining the standard). Another example would be if a petitioner raises a claim that the jury was erroneously instructed on the law at sentencing. It may be possible to show that, but for the error, no reasonable juror would have found the petitioner eligible for the death penalty. In such cases, the limitations of § 2254(e)(2) would not apply because the petitioner would not be attempting to introduce any new evidence, or develop new facts that he previously failed to develop.

■ In addition, the limitations of § 2254(e)(2) would not apply where the applicant did not "fail" to introduce the relevant factual evidence in state proceedings. This court agrees with other courts that have examined this issue, and have held that § 2254(e)(2) does not apply when a petitioner attempted to, but was denied the opportunity to develop the facts by the state courts. *See Cardwell v. Netherland*, 971 F.Supp. 997, 1009–12 (E.D.Va.1997) (for a thorough discussion of this provision of the statute); *see also Love v. Morton*, 112 F.3d 131, 136 (3d Cir.1997); *Burris v. Parke*, 116 F.3d 256 (7th Cir.1997); *Washington v. Mazurkiewicz*, 1997 WL 83771, at *2 n. 1 (E.D.Pa. Feb.25, 1997).

■ By prefacing the requirements with "[i]f the applicant has failed to develop the factual bases of a claim" the statute, on its face, indicates that the above interpretation is the correct one. § 2254(e)(2). The statute seems to expressly apply only where the flawed fact-finding is somehow attributable to the petitioner.[10] In addition, as the *Burris* court held, "failure implies omission—a decision not to introduce evidence when there was an opportunity, or a decision not to seek an opportunity." *Burris*, 116 F.3d at 258. Furthermore, a strict liability interpretation would allow states to insulate "its decisions from collateral attack in federal court by refusing to grant evidentiary hearings in its own courts." *Burris*, 116 F.3d at 259. If Congress had intended to create a type of strict liability statute, it could have easily provided that the requirements of § 2254(e)(2) apply whenever the factual basis of a claim was not developed in state court proceedings. Thus, where the faulty record is attributable to the state, and not the defendant, § 2254(e)(2) will not apply.[11] In conclusion, the court holds that § 2254(e)(2)(B) does not necessarily dispense with the concept of "actual innocence of the death penalty." The standard for determining when a procedurally defaulted claim may be reviewed has not been altered by the

---

**10.** Of course, omissions by counsel are also attributable to the client. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (holding that in absence of performance that is constitutionally ineffective, petitioner bears risk for all attorney errors that result in procedural default).

**11.** This interpretation also accords with the President's understanding of § 2254(e) when he signed Pub.L. 104–132 into law. He stated: "If [§ 2254(e) (as amended)] were read to deny litigants a meaningful opportunity to prove the facts necessary to vindicate federal rights, it would raise serious constitutional questions. I do not read it that way. The provision applies to situations in which 'the applicant has failed to develop the factual basis' of his or her claim. Therefore, [§ 2254(e) (as amended)] is not triggered when some factor that is not fairly attributable to the applicant prevented evidence from being developed in State court." Statement of the President, Office of the Press Secretary, April 24, 1996.

general provisions of the AEDPA.[12] Accordingly, the reviewability of such claims are still governed by the standards developed by the Supreme Court, in cases such as *Murray v. Carrier* and *Sawyer v. Whitley.* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). Generally, a procedurally defaulted claim will not be reviewable. The exception is if a petitioner can show either (1) cause and prejudice for his default; or (2) that failure to hear the claims would constitute a "miscarriage of justice." See *Sawyer,* 505 U.S. at 338–39, 112 S.Ct. 2514. To meet the miscarriage of justice exception, the petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Those petitioners who are sentenced to death may also meet the exception by showing through clear and convincing evidence that but for a constitutional error, no reasonable juror would have found him eligible for the death penalty. *Sawyer,* 505 U.S. at 336, 112 S.Ct. 2514.

Whether an evidentiary hearing may be granted for the purpose of developing facts not previously developed in state court is an entirely separate question. In some cases, a constitutional claim will not need further factual development. In other cases, § 2254(e)(2) will not be applicable because the failure to develop facts in state court will not be attributable to the petitioner. Of course, it is also possible that a petitioner who meets the standard for having a defaulted claim reviewed, and who needs to further develop facts that he failed to previously develop, may not be able to make the showing required under § 2254(e)(2). Such a petitioner will thus be unable to develop the facts necessary to properly present his claim, even though his defaulted claim is technically reviewable under the applicable *Sawyer* standard. But whether that latter situation arises will depend on the particular claims raised and the particular circumstances of a petitioner's case.

For the above reasons, the court finds that the Magistrate Judge did not err in evaluating petitioner's defaulted claims under the "actual innocence of the death penalty" standard to determine if his procedurally defaulted claims warranted review on the merits. The Magistrate Judge was also correct in finding that Virginia does not qualify for special review under Chapter 154, because it has not met the "opt-in" requirements.

## II. Procedural Default

### A. Ineffective Assistance Claims

Weeks' petition contained a number of ineffective assistance of counsel claims. Only Claims IX and XXXI are free-standing claims. Many of Week's other thirty-two substantive claims, however, contain ineffective assistance claims argued "in the alternative." Only one ineffective assistance claim, Claim IX, was raised in Weeks' state habeas petition. The other ineffective assistance of counsel claims were never presented to the Supreme Court of Virginia. In addition, Weeks' state habeas petition was never reviewed on the merits because it was dismissed by the Supreme Court of Virginia as untimely. Thus, none of petitioner's ineffective assistance of counsel claims were ever presented to Virginia's highest state court.

The Magistrate Judge found that all of Weeks' ineffective assistance of counsel claims were procedurally defaulted, due to both the untimely filing of his state habeas petition, and the omission of claims from the petition. In addition, the Magistrate Judge found that none of the defaults were excused by either the "cause and prejudice" or the "actual innocence" exceptions. Petitioner objected to each of these findings.

### 1. Untimely State Habeas Petition

■ Weeks objects to the Magistrate Judge's conclusion that the dismissal of the state habeas petition for untimeliness was an adequate and independent state bar to federal review. Effective on July 1, 1995, prisoners under sentence of death were required to

---

**12.** As explained above, the standard has been changed in death penalty cases, but only for those cases that are in states which have "opted-in" to the special provisions of Chapter 154. 28 U.S.C. § 2264(a)

comply with a statute of limitations for filing a habeas petition, and they were limited to filing an original petition in the Virginia Supreme Court. Va.Code §§ 8.01–654.1, 8.01–654(C)(1); Supreme Court Rule 5:7A. Weeks' counsel originally filed a petition for habeas corpus in the wrong court; he filed in the Circuit Court of Prince William County instead of the Supreme Court of Virginia. On December 1, 1995, the date on which the petition was due under the new statute of limitations, counsel withdrew the petition from the circuit court and mailed it, by regular mail, to the Supreme Court of Virginia. On March 15, 1996, the Supreme Court dismissed the petition as jurisdictionally barred because it was not timely.[13]

■ Petitioner points out that a state procedural rule is not adequate to preclude federal court review of the merits unless that rule is both firmly established and regularly applied. *See Ford v. Georgia,* 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991). Weeks argues that the rule applied to him in this case was not firmly established. According to petitioner, the rule of "dismissing untimely original habeas petitions" was not firmly established because the court had never before had an "opportunity to consider how it would treat an untimely habeas petition under its original jurisdiction." Petitioner's Objections at 9. Because there was no precedent dismissing original habeas petitions for untimeliness, petitioner maintains that the rule cannot be considered firmly established.

■ This objection is without merit. As a general matter, procedural rules derived from unambiguous state statutes and supreme court rules are necessarily "firmly established." *O'Dell v. Netherland,* 95 F.3d 1214, 1241 (4th Cir.1996), *aff'd on other grounds,* — U.S. —, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).[14] The applicable statute provides that "[n]o petition for a writ of

habeas corpus filed by a prisoner held under a sentence of death shall be considered unless it is filed within sixty days after . . . . denial by the United States Supreme Court of a petition for a writ of certiorari to the judgment of the Supreme Court of Virginia on direct appeal. . . ." Va.Code § 8.01–654.1. This statute, which was relied on by the Supreme Court in dismissing Weeks' habeas petition, is clear and unambiguous. Accordingly, the Magistrate Judge correctly found that the Virginia Supreme Court's dismissal of Weeks' petition as untimely was a state ground "adequate" to bar federal habeas review. Thus, all of petitioner's claims of ineffective assistance are defaulted, including Claims IX and XXXI.

### 2. Cause and Prejudice

■ Weeks objects to the Magistrate Judge's conclusion that the performance of his state habeas counsel does not excuse the procedural default of his claims. Petitioner argues that he has a constitutional right to effective state post-conviction counsel for the purpose of presenting claims that, as a matter of law, could not have been raised on direct appeal. In Virginia, claims of ineffective assistance of trial counsel may only be presented on collateral review, and not on direct appeal. *Goins v. Commonwealth,* 251 Va. 442, 470 S.E.2d 114, 124 n. 2(Va.), *cert. denied,* — U.S. —, 117 S.Ct. 222, 136 L.Ed.2d 154 (1996). According to petitioner, it follows that ineffective assistance of state habeas counsel does constitute cause for failure to raise ineffective assistance of trial counsel claims.

■ Ineffective assistance of counsel may constitute "cause" for procedural default, under certain circumstances. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Attorney error will only constitute "cause" if, at the time of the error,

---

**13.** The Supreme Court of Virginia does not accept pleadings mailed but not received within the prescribed time limits unless they are sent by certified or registered mail. Supreme Court Rule 5:5(b).

**14.** In the case cited by petitioner, *Ford v. Georgia,* the new procedural rule was held to be not firmly established only because it was created

*after* the time that petitioner would have had to obey the rule. 498 U.S. at 424–25, 111 S.Ct. 850. In this case, the rule is not being applied retroactively. The new rule for filing habeas petitions in death penalty cases was clearly in effect before Weeks was required to file his petition.

petitioner had a constitutional right to the assistance of counsel. *See Coleman v. Thompson,* 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The United States Supreme Court has established that, although there is a right to counsel on a first appeal as of right, there is no constitutional right to counsel on post-conviction collateral review. *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989); *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). However, the Supreme Court arguably, in *Coleman,* left open the possibility that there may be an exception to the rule of *Giarratano* and *Finley,* at least where state collateral review is the first place in which a prisoner can raise a particular claim. *Coleman,* 501 U.S. at 755, 111 S.Ct. 2546. The Supreme Court specifically declined to decide the question at that time. *Id.* If there is such a *Coleman* exception, a showing of ineffective assistance of counsel in state habeas could constitute cause for failure to raise Weeks' ineffective assistance of trial counsel claims.

However, the Fourth Circuit Court of Appeals has recently examined this very question, rejecting the argument advanced by Weeks. *Mackall v. Angelone,* 131 F.3d 442 (4th Cir.1997) (*en banc* ), *cert. denied,* —— U.S. ——, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998). The court explained that it was bound by the Supreme Court's controlling holding in *Finley* until it was actually overruled by the Supreme Court, and not merely questioned by the Court. *Id.* at 449. Accordingly, the Fourth Circuit held that Mackall did not have a constitutional right to counsel in his state habeas proceeding, even if that proceeding was his first opportunity to raise particular claims. *Id.* Thus, Mackall could not show cause to excuse the procedural default of his claims that his trial and appellate counsel were ineffective. *Id.*

Weeks makes the additional claim that, even if he had no Sixth Amendment right to counsel on state habeas, he had a due process right based on his state statutory right to counsel. However, for the reasons stated in the Report and Recommendation, Weeks has not shown that the due process clause was violated. Nor has he shown that such

violation, if proven, would be equivalent to a violation of the Sixth Amendment Right to Counsel, such that it could constitute cause under *Coleman,* 501 U.S. at 752, 111 S.Ct. 2546 (holding that an error by counsel could constitute cause for defaulting a claim, but only if at the time of the error, petitioner had a constitutional right to the assistance of counsel).

Pursuant to *Mackall,* Weeks had no constitutional right to counsel on state collateral review, even though he had no opportunity to present his ineffective assistance of counsel claims at an earlier point. Consequently, Weeks cannot demonstrate cause to excuse the procedural default of his ineffective assistance of counsel claims.

### 3. Fundamental Miscarriage of Justice

■ Petitioner objects to the Magistrate Judge's conclusion that Weeks did not meet the standard to have his defaulted ineffective assistance claims reviewed under the "miscarriage of justice" exception. For the following reasons, the Magistrate Judge did not err in finding that Weeks' defaulted ineffective assistance claims could not be reviewed.

Weeks does not claim that he is actually innocent of the murder of Trooper Cavazos, but only that he is "actually innocent" of the death penalty. In order to have any of his defaulted claims reviewed on the merits, Weeks is required to show by clear and convincing evidence that but for constitutional error, no reasonable juror would have found petitioner eligible for the death penalty. *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992). In addition, a petitioner must focus "on those elements which render a defendant eligible for the death penalty, and not on additional mitigating evidence which was prevented from being introduced as a result of a claimed constitutional error." *Id.* at 347, 112 S.Ct. 2514. Accordingly, Weeks must show that he was actually ineligible for the death penalty under Virginia law, so that barring the constitutional error, no reasonable juror would have sentenced him to death.

Under Virginia law, a juror must find one of two aggravating factors for a defendant to be eligible for the death penalty: (1) that

there is a reasonable possibility that the defendant would commit criminal acts of violence which would constitute a continuing serious threat to society ("future dangerousness"); or (2) the defendant's conduct in committing the offenses was outrageously or wantonly vile, horrible or inhuman, in that it involved torture, depravity of mind, or aggravated battery to the victim ("vileness"). Va. Code § 19.2-264.4(c). In Weeks' case, the Commonwealth presented evidence on the second factor, "vileness." The state focused on proving depravity of the mind and/or aggravated battery. See R & R at 29-30 (for description of evidence presented to support presence of both factors). The jury found the presence of "vileness," and subsequently imposed the penalty of death. The Virginia Supreme Court specifically found that both depravity of mind and aggravated battery were sufficiently established. Weeks v. Commonwealth, 248 Va. 460, 450 S.E.2d 379 (1994), cert. denied sub nom. Weeks v. Virginia, 516 U.S. 829, 116 S.Ct. 100, 133 L.Ed.2d 55 (1995).

In order to have his ineffective assistance of counsel claims reviewed on the merits, Weeks must show that but for the ineffective assistance, no juror would have found the presence of the "vileness" aggravating factor. The Magistrate Judge was correct in noting that Weeks' "petition glosses over his claims of ineffective assistance for the most part, raising the claims in the alternative to substantive claims, addressing them in a cursory fashion." R & R at 30.[15] He never explains how the alleged ineffective assistance of counsel affected the finding of the presence of vileness, an aggravating factor. He certainly does not show by clear and convincing

evidence that but for ineffective assistance of counsel, no jury would have found petitioner eligible for death.

In his petition, where he does argue ineffective assistance of counsel, petitioner merely argues that a "reasonable probability exists that, absent counsel's deficient performance occasioned by the trial court's error, the outcome at trial would have been different with respect to guilt and/or sentence." This is a restatement of the prejudice prong of the Strickland test. See Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, even if petitioner could meet the Strickland prejudice prong, that is not sufficient to meet the higher burden required to show actual innocence of the death penalty.[16]

Weeks, in his objections to the R & R, argues that the Magistrate Judge erred because "it is 'clear and convincing' that no reasonable juror would have sentenced Mr. Weeks if it were not for the denial of defense expert assistance and the ineffectiveness of trial counsel forced to proceed without such assistance." Petitioner's Obj. to R & R at 15-16. There are a number of separate assumptions comprising petitioner's argument.

According to petitioner, the state's entire aggravation case was built on the testimony of forensic and ballistic experts. "Thwarted by the court's repeated refusal not only to provide forensic and ballistic expert assistance, but also to permit the trial defense counsel to request such assistance in an ex parte hearing, Mr. Weeks' trial defense counsel was ineffective because he was barred from obtaining and using essential members of the trial team." Petitioner's Obj. to R &

---

15. Only Claims IX and XXXI were raised independently, and neither have any relationship to the finding that Weeks was eligible for the death penalty based on vileness. Claim IX alleges that Weeks' trial counsel was ineffective in advising him to plead guilty to grand larceny and use of a firearm. Claim XXXI simply alleges general ineffective assistance of trial counsel.

16. Of course, at the points where these claims of prejudice were raised, petitioner was assuming that the claims were in fact reviewable on the merits. Because petitioner, at that point, was arguing the merits of the ineffective assistance of counsel claims, he was only trying to show

Strickland prejudice and not "actual innocence." Earlier in the petition, Weeks argued that his procedural default should be excused for cause due to the ineffectiveness of state habeas counsel. See Pet. at 36. Petitioner never actually argued in his petition that, in the alternative, the default should be excused under the "actual innocence" exception. However, the Magistrate Judge sua sponte chose to review the claims for such an exception, and the petitioner subsequently filed objections to the Magistrate Judge's conclusions. Accordingly, this court will review that portion of the R & R, as well as the corresponding objections, as if it had been raised in the petition.

R at 14–15. According to Weeks, this ineffective assistance of counsel affected the finding of the "vileness" aggravating factor because petitioner did not have the ability to challenge the Commonwealth's experts or present evidence in support of the defense theory of the case.

The court will assume for the sake of this discussion, as petitioner seems to, that the only evidence offered to show vileness came from the ballistic and forensic experts.[17] The court will also assume that, if Weeks had been granted his motion for the appointment of expert assistance, no jury would have found him eligible for the death penalty. Assuming all of that to be true, Weeks would still not have made the showing that is required to have his ineffective assistance of counsel claims reviewed.

The "actual innocence" doctrine is a gateway through which a petitioner may have specific defaulted constitutional claims reviewed. To have a defaulted constitutional claim reviewed, petitioners are required to link their new evidence to that defaulted claim, with a showing that it is the claimed error which prevented the fact finder from adequately considering the evidence at trial. *Spencer v. Murray*, 18 F.3d 229, 236 (4th Cir.1994).[18] This is because the actual innocence exception "is grounded in the 'equitable discretion' of habeas courts to see that

federal constitutional errors do not result in the incarceration of innocent persons." *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). The habeas court does not sit to correct errors of fact, but to ensure that individuals are not imprisoned in violation of the constitution. *Id.* at 400–01, 113 S.Ct. 853.

The problem, in this case, is that the constitutional error, which petitioner is claiming should be reviewed, is not the alleged trial court error denying the motion for expert assistance. Instead, Weeks is arguing that his ineffective assistance of counsel claims should be reviewed. However, he never sufficiently explains precisely how his trial counsel was ineffective and how that ineffectiveness contributed to the finding of "vileness."

Petitioner essentially argues that, as result of the court's denial of expert assistance, his counsel's representation was rendered ineffective. *See* Petitioner's Obj. to R & R at 14; Pet. for Writ at 42. However, he does not actually point to an error by defense counsel that may have affected the jury's decision on vileness. Weeks does not point to anything done by counsel, which should not have been done, or anything counsel failed to do, which he should have done. An example of such error would be if counsel had failed to request the appointment of such assistance. In

---

**17.** Petitioner ignores the fact that most of the evidence relied on to show vileness and depravity of the mind did not come from the ballistics and forensic experts, and in fact consisted of many details of the crime that were admitted to by Weeks himself. Some of these facts are included in the following paragraph taken from the Supreme Court of Virginia's decision. "On probation, riding in a stolen vehicle, and possessing a weapon that the evidence showed had been used in a previous North Carolina murder, defendant shot the trooper at virtually point-blank range at least six times to avoid arrest.... The officer posed no threat to defendant in connection with this routine traffic stop; the trooper died with his service revolver still enclosed in its holster. Then, the defendant left and returned to the scene, falsely claiming that the attempted to render assistance to the victim when his real purpose was to retrieve incriminating evidence." *Weeks v. Commonwealth*, 248 Va. 460, 450 S.E.2d 379, 390–391 (1994).

**18.** The Fourth Circuit Court of Appeal has since questioned the correctness of *Spencer*, in light of the Supreme Court's decision in *Schlup v. Delo*,

513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). *See O'Dell v. Netherland*, 95 F.3d 1214, 1246 n. 26 (4th Cir.1996) (The court pointed out that *Spencer* rested on *Sawyer v. Whitley*, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), which was rejected by *Schlup* for claims of actual innocence of the crime itself, and that *Schlup* makes no mention of a "but for" requirement). However, the court has not yet overturned *Spencer*. *See O'Dell*, 95 F.3d at 1246 n. 26. Moreover, to the extent that the Supreme Court's decision in *Schlup* would affect the *Spencer* holding, it would only affect it with respect to claims of actual innocence of the crime itself. *Sawyer*, the case upon which *Spencer* relied, still governs the standard of review for claims involving actual innocence of the death penalty. *See Sawyer*, 505 U.S. at 333, 112 S.Ct. 2514 (petitioner must show "by clear and convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law").

point of fact, Weeks' counsel did move for the appointment of expert assistance in a timely manner. In addition, there is no evidence that counsel could have done anything differently to persuade the court to change its mind and appoint such assistance.[19]

The court finds that petitioner has made no colorable showing of an underlying constitutional error by counsel that is related to the jury finding of eligibility for the death penalty. Thus, petitioner has clearly not met the standard required to show that a miscarriage of justice will result if his defaulted ineffective assistance of claims are not reviewed.

### B. Claims Barred Under Supreme Court Rule 5:25

 Petitioner objects to the Magistrate Judge's finding that Weeks' Claims IV and XXIV are procedurally barred, and thus should be dismissed. The Supreme Court of Virginia had dismissed the claims on direct appeal under Supreme Court Rule 5:25. Rule 5:25 prohibits the consideration of errors which were not contemporaneously objected to at trial, and thus preserved for appeal.

The Magistrate Judge held that Rule 5:25 constitutes an adequate and independent state bar, such that a federal court may not review these claims unless the petitioner can demonstrate "cause" and "prejudice" for his default. The Judge further found that petitioner could not demonstrate cause to excuse his default. Petitioner objects to the finding that Rule 5:25 constitutes an adequate and independent state bar. Specifically, Weeks argues that the Rule is not firmly established and regularly followed, as required to be an adequate and independent procedural bar to federal review. See Ford v. Georgia, 498

U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991); James v. Kentucky, 466 U.S. 341, 348–51, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984).

Although the adequate and independent determination is a federal question, the conclusion that a state does not require a contemporaneous objection is a significant determination, and "should not be reached lightly or without clear support in state law." Meadows v. Holland, 831 F.2d 493, 497 (4th Cir.1987) (en banc), vacated on other grounds, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 575 (1989). According to the Fourth Circuit Court of Appeals, the effect would be to "substantially diminish the concept of finality in the operation of the state criminal justice system." Id.

This court's own careful de novo review of the decisions involving Virginia's contemporaneous objection rule convinces this court that this procedural bar satisfies the requirement of consistent application. Consequently, the rule constitutes an "adequate and independent state ground" upon which federal review may be precluded. Accordingly, the court does hereby adopt and approve the findings and recommendation of the United States Magistrate Judge related to Rule 5:25. See R & R at 31–33 (for a detailed discussion of Rule 5:25 as a procedural bar to federal review).

### C. Claims Barred Due to Failure to Brief on Direct Appeal

 The Magistrate Judge held that Weeks' Claims II, III, VI, VIII, XVII, XXI, and XXIII are procedurally defaulted and should be dismissed. Petitioner objected to this recommendation, arguing that the claims were not defaulted,[20] or in the alternative,

---

19. Weeks does make the additional conclusory allegation that "Mr. Weeks' trial counsel rendered ineffective assistance in the defense of Mr. Weeks by failing to argue additional reasons in support of his position which would have caused the trial court to reverse itself." Pet. for Writ at 42–43, ¶ 149. This bare assertion is clearly insufficient to show that trial counsel was ineffective.

20. Weeks disagrees with the Magistrate Judge's characterization of the procedural posture of

these claims. Weeks argues that the claims were exhausted because they were presented to the Supreme Court along with supporting arguments in the original 90 page brief. He alternatively argues that the claims are exhausted because the 50 page limit constitutes "circumstances ... that render [the state's] process ineffective to protect the rights of the applicant," such that they are exhausted under 28 U.S.C. § 2254(b)(1)(B)(ii). Weeks also cites the same provision in support of the argument that he was excused from presenting the claims and arguments to the state court.

that the default is excused because the state court deprived him of the ability to present the claims.

Weeks initially filed a ninety page brief assigning forty-seven errors in his appeal. In addition, Weeks filed a motion for leave to file an oversized brief because of the Rule limiting the page length of briefs to fifty pages. Supreme Court Rule 5:26. The Supreme Court denied Weeks' motion, and or-dered him to file a second, conforming, fifty-page brief. In so doing, petitioner claims he was forced to eliminate all argument in support of a number of claims. Consequently, the Supreme Court of Virginia dismissed ten alleged errors, including the current Claims II, III, VI, VIII, XVII, XXI, and XXIII, for failure to brief.

The Supreme Court clearly expressed that it was dismissing these claims for failure to brief or argue the errors, a state procedural ground. *Weeks v. Commonwealth*, 248 Va. 460, 450 S.E.2d 379, 383 (1994) (citing *Jenkins v. Commonwealth*, 244 Va. 445, 423 S.E.2d 360, 364 (1992)). Failure to brief is an adequate and independent state ground for dismissing claims. As asserted by the Magistrate Judge, "[i]t would be completely unreasonable to expect a court to decide 'on the merits' a claim that was not briefed or argued. Thus, the only option for the [Virginia Supreme] Court in this case, faced with petitioner's unsupported and conclusory claims, was to dismiss those claims on procedural grounds." R & R at 38. Furthermore, petitioner offers no argument that the rule is not regularly or consistently applied, such that it may not be considered an adequate state ground.

In petitioner's supplemental authority for his objections, filed on November 13, 1997, Weeks points to an Eighth Circuit case to support an argument that the claims were not defaulted. However, *Clemmons v. Delo*, 124 F.3d 944 (8th Cir.1997), is clearly distin-guishable from this case. In *Clemmons*, the Missouri Supreme Court had refused to consider a particular claim on the merits. There the claim had been included in a *pro se* supplemental brief, which the state court had refused to consider. The Eighth Circuit held that the claim had been fairly presented to the state court; in other words, that there was no procedural default. *Id.* at 948–49. This decision was based on the court's finding that there was no regularly applied state procedural rule, such that it was an adequate ground supporting a procedural bar. *Id.* at 948 n. 3. According to the court, the Missouri Supreme Court sometimes allows *pro se* briefs, and sometimes does not, with no regularly applied criteria. *Id.* As explained above, the Virginia Supreme Court's rule of refusing to consider claims that have not been briefed is regularly applied. As such, it is an adequate and independent state ground barring review.

■ Petitioner argues, however, that the claims dismissed by the Supreme Court were not adequately briefed because of the imposition of the fifty-page limit. According to petitioner, this page limitation constitutes cause sufficient to excuse his procedural default. The existence of cause for procedural default must ordinarily turn on whether petitioner can show that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). In this case, though, the actual cause of counsel's failure to properly brief particular claims was not the fifty-page limit, but was the strategic choice made by counsel to focus on particular claims.

However, it does appear that in this case the page limitation actually precipitated defense counsel's decision to make this strate-

---

*See* Petitioner's Obj. to R & R at 18. However, § 2254(b)(1) has no bearing on whether a procedural default may be excused, such that it can be reviewed on the merits. Section 2254(b)(1) bears only on the exhaustion doctrine. Furthermore, petitioner is conflating the issues of exhaustion and default. As explained by the Magistrate Judge, all of petitioner's claims are clearly exhausted at this point, regardless of the reasoning. R & R at 35–36. Both parties, as well as this court, are in agreement that petitioner's claims have been exhausted. The only issue here is whether these particular claims are procedurally defaulted by Weeks' failure to brief, and whether the default is excused such that this court may review the claims on the merits.

gic choice.[21] However, this page limitation is not unreasonable.[22] Nor is the resulting consequence that appellate counsel must make choices as to which claims to press problematic. As the Supreme Court has noted,

> There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. This has assumed a greater importance in an era when oral argument is strictly limited in most courts—often to as little as 15 minutes—and when page limits on briefs are widely imposed.... A brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular,'—in a verbal mound made up of strong and weak contentions.

*Jones v. Barnes,* 463 U.S. 745, 752–53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). In addition, it would make no sense if a rule, which is itself a reasonable and consistently applied state procedural rule, could constitute cause for failing to comply with another rule. All procedural rules, whether working alone or in conjunction with others, impose restrictions on litigants. It is entirely reasonable for a state to expect a litigant to comply with all of its procedural rules, as long as all of the rules are themselves reasonable and are not arbitrarily imposed.

For the above reasons and the reasons stated in the R & R, this court does hereby adopt and approve the United States Magistrate Judge's findings and recommendation that Claims II, III, VI, VIII, XVII, XXI, and XXIII are procedurally defaulted and should be dismissed. *See* R & R at 33–34.

### D. Claim Barred Due to Improper Briefing on Direct Appeal

■ The Magistrate Judge held that Weeks' Claim XXXIII is procedurally de-

faulted and should be dismissed. Petitioner objected to this recommendation, arguing that the procedural bar was not adequate or in the alternative, that the default is excused because the state court deprived him of the ability to present the claims.

The Supreme Court of Virginia refused to consider Claim XXXIII on direct appeal because Weeks had impermissibly incorporated by reference a memorandum filed on the subject in the trial court. *Weeks v. Commonwealth,* 248 Va. 460, 450 S.E.2d 379, 388 (1994) (citing *Jenkins v. Commonwealth,* 244 Va. 445, 423 S.E.2d 360, 370 (1992), for the proposition that the defendant has an obligation to state clearly to an appellate court the grounds for asserting that the trial court's ruling is erroneous, and that cross-reference to arguments presented at trial is insufficient). The *Jenkins* rule is an adequate and independent ground for dismissing claims. It is a reasonable procedural rule and there is no indication that it is arbitrarily or inconsistently applied. As such, unless Weeks can demonstrate cause and prejudice for the procedural default, the claim may not be reviewed on the merits by this court.

■ The only cause expressed by petitioner is the briefing limitation of fifty pages. As discussed above, this limitation does not constitute cause for Weeks' procedural defaults on appeal. *See supra* part II.C. Accordingly, the court does hereby adopt and approve the United States Magistrate Judge's findings and recommendation that Claim XXXIII is procedurally defaulted and should be dismissed. *See* R & R at 39–40.

### E. Claims Barred Due to Failure to Raise on Direct Appeal

■ Petitioner objects to the Magistrate Judge's finding that Weeks failed to raise Claims XXX and XXXII in the state courts, such that these claims are now procedurally barred from review. After a *de novo* review

---

**21.** Other factors could also precipitate such a strategic choice by counsel, such as the belief that the defendant has a better chance of winning on appeal by pressing only the strongest claims, rather than obscuring the strong ones with many weak claims. Of course, this factor is more relevant to the claims Weeks defaulted be-

cause of a complete failure to raise them. *See infra* part II.E.

**22.** The Federal Courts of Appeals and the United States Supreme Court both limit opening briefs to 50 pages. Fed.R.App.P. 28; U.S. S.Ct. R. 33.1.

of the record, the court agrees with the Magistrate Judge that Claims XXX and XXXII were never raised in state court. These claims would clearly be procedurally barred if Weeks attempted to bring them before a state court at this time.[23] Furthermore, the alleged ineffective assistance of state habeas counsel does not excuse petitioner's default of either claim, for the reasons stated previously. *See supra* part II. A.2.

Accordingly, the court does hereby adopt and approve the United States Magistrate Judge's findings and recommendations that Claims XXX and XXXII are procedurally defaulted and thus may not be reviewed on their merits. *See* R & R at 40–42.

### F. Conclusion

For the above reasons, the following Claims are considered procedurally defaulted, and will not be reviewed by this court on their merits: II, III, IV, VI, VIII, IX, XVII, XXI, XXIII, XXIV, XXX, XXXI, XXXII, XXXIII. In addition, all of Weeks' ineffective assistance of counsel claims are procedurally defaulted and will not be reviewed.

### III. Standard of Review

#### A. Motion for Summary Judgment

■ Petitioner objects to the Magistrate Judge's statement of the standard governing a motion for summary judgment on the ground that it is incomplete. First, petitioner points out that the Magistrate Judge failed to mention that respondent has an initial burden in a motion for summary judgment. Accordingly, this court notes that the party seeking a summary judgment does bear the initial responsibility of informing the district court of the basis for its motion, and of identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is at that point that the opposing party must come

forward and make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. 2548. This is the legal standard being applied herein by this court.

Second, petitioner points out that a summary judgment is inappropriate where a party has been denied discovery or other opportunity to develop material facts. Petitioner maintains that he has been denied an opportunity to develop material facts, by the Magistrate Judge's denial of expert assistance. According to Weeks, the assistance of a ballistics expert and forensic pathologist is necessary for him to support Claim I of his petition, in which he argues that the trial court's refusal to provide expert assistance violated his rights under the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.

On December 24, 1996, petitioner filed his motion and brief in support of the motion for authorization to obtain expert assistance. The Magistrate Judge denied the request on January 23, 1997. On February 5, 1997, petitioner filed objections to the Magistrate Judge's Opinion and Order. However, Weeks' petition for a writ of habeas corpus was filed on February 7, 1997, and his objection to the Magistrate Judge's decision on the request for experts was never ruled on by this court. Consequently, this court will now review the Magistrate Judge's Opinion and Order, along with petitioner's objection.

■ Pursuant to 28 U.S.C. § 636(b)(1)(A), the district court may "designate a magistrate to hear and determine any pretrial matter pending before the court." Following the magistrate's ruling, a "judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law." *Id.; see also* Fed.R.Civ.P. 72(a). The decision of whether to appoint experts is a pretrial mat-

---

**23.** The claims would be barred by both: (1) Virginia's abuse of the writ statute, Va.Code § 8.01–654(B)(2), prohibiting the filing of a second habeas petition on grounds known at the time of filing the first petition, and (2) Va.Code

§ 8.01–654.1, which states that in death penalty cases habeas petitions will not be reviewed by the Supreme Court unless it is filed within 60 days of the completion of all direct appeal remedies.

ter, and thus will be reviewed under the clearly erroneous standard.[24]

Petitioner contends that the Magistrate Judge applied the incorrect standard in deciding his request for expert assistance pursuant to 21 U.S.C. § 848(q)(9). He further maintains that the denial of the ballistics expert and forensic expert was clearly erroneous under the correct standard. This court finds that the Magistrate Judge did utilize an incorrect standard in determining the request. However, this court upholds the ultimate decision denying expert assistance, albeit for different reasons.

▮ Petitioner's motion is for the appointment of a forensic pathologist and ballistics expert to assist him in the preparation of his petition for a writ of habeas corpus. Specifically, he seeks the assistance of experts to prepare his claim that his defense was prejudiced by the trial court's refusal to appoint such experts. He maintains that such experts were necessary for him to adequately present a defense on the issues of premeditation and vileness. The motion for experts was pursuant to 21 U.S.C. § 848(q)(9), which states:

> Upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant, and if so authorized, shall order the payment of fees and expenses therefor under paragraph (10).

21 U.S.C. § 848(q)(9). Thus the question essentially reduces to whether the appointment of ballistic and forensic experts were reasonably necessary to Weeks in presenting his petition for § 2254 relief. The statute does not define reasonably necessary. However, courts have held that expert assistance is not reasonably necessary where an evidentiary hearing at which the testimony could be presented will not be held. *See Lawson v. Dixon,* 3 F.3d 743, 753 (4th Cir.1993); *see also Fuller v. Johnson,* 114 F.3d 491, 502 (5th Cir.) (experts not reasonably necessary

where such testimony would be procedurally barred), *cert. denied,* —— U.S. ——, 118 S.Ct. 399, 139 L.Ed.2d 312 (1997); *Cardwell v. Netherland,* 971 F.Supp. 997, 1007 (E.D.Va. 1997) (experts not reasonably necessary if evaluations cannot be introduced); *Burris v. Parke,* 948 F.Supp. 1310, 1327 (N.D.Ind.1996) (experts not reasonably necessary where evidence cannot be introduced because petitioner is not entitled to an evidentiary hearing), *aff'd,* 116 F.3d 256 (7th Cir.1997). Accordingly, if petitioner's claim, for which he requests the expert assistance, cannot be reviewed on the merits, or if he would not be able to win on the merits regardless of the expert's finding, the appointments are not necessary for the petition.

The Magistrate Judge concluded that experts were not reasonably necessary because even if the requested experts fulfilled Week's expectations, he could not show prejudice. However, in determining that petitioner could not show that the trial court's denial of experts prejudiced him, the Magistrate Judge erroneously relied upon the Supreme Court's decision in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

In *Jackson,* the Supreme Court held that the habeas court, viewing the evidence in the light most favorable to the prosecution, must ascertain whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318–19, 99 S.Ct. 2781. The Magistrate Judge, in applying that standard to this case, held that "[i]f a rational juror could still reasonably decide to impose the death sentence in the face of this new evidence, then the experts would make no practical difference to Weeks' habeas petition and hence cannot be reasonably necessary." Opinion and Order at 9 (January 23, 1997).

The Magistrate Judge proceeded to examine the evidence introduced at trial in light of the "vileness" prong of the Virginia death penalty statute. He then held that if Weeks' experts had testified at trial as Weeks hoped they would, "that additional evidence would

---

**24.** This is in contrast to the *de novo* review accorded the Magistrate Judge's recommenda-

tions on dispositive matters, to which objections have been made. *See* Fed.R.Civ.P. 72(b).

not entitle Weeks to a ruling that no rational juror could find 'depravity of mind and/or aggravated battery.' " Opinion and Order at 16 (January 23, 1997). Consequently, the court found that the requested forensic pathologist and ballistics expert were not "reasonably necessary" under § 848(q)(9).

However, *Jackson* announced the standard of review for a federal habeas court determining, on the merits, whether sufficient evidence exists to support a state court conviction. *Jackson*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. The *Jackson* standard would be relevant if Weeks wanted the experts to help prove a claim that there was insufficient evidence to support a conviction. His claim, for which he seeks assistance, though, is not that there was insufficient evidence to convict him, or even that there was insufficient evidence to sentence him to the death penalty. His underlying claim is that the trial judge violated his due process rights when he denied him expert assistance at trial.

■ Petitioner can prevail on such a habeas claim if he can show that the state's decision was contrary to clearly established federal law, pursuant to § 2254(d), and that the error was not harmless. In showing that the trial error was not harmless, i.e., that he was prejudiced, the *Jackson* standard is not the relevant standard. The Supreme court has directed federal courts on collateral review to apply the standard set forth in *Kotteakos* to trial errors. *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Thus federal courts must determine whether the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The Fourth Circuit Court of Appeals has held that the *Brecht* harmless-error standard applies to a trial court's refusal to grant expert psychiatric assistance. *Tuggle v. Netherland*, 79 F.3d 1386 (4th Cir.), *cert. denied*, —— U.S. ——, 117 S.Ct. 237, 136 L.Ed.2d 166 (1996).

Accordingly, the Magistrate Judge, in deciding whether the trial court's decision prejudiced Week's, should have asked whether the denial of experts had a substantial and injurious effect or influence on the jury's sentencing decision. If it is clear that the denial did not have such a prejudicial affect, regardless of what the experts could offer and regardless of whether the denial was an error, Weeks would not be able to prevail on the merits of his claim. And consequently, the expert assistance would not be "reasonably necessary."

■ Although the Magistrate Judge incorrectly analyzed the request for expert assistance, Weeks nevertheless' is not entitled to the requested assistance. Furthermore, this court need not determine whether the trial court's decision was harmless, under even the *Brecht* standard. This court cannot grant Weeks' petition for a writ of habeas corpus, based on the state's denial of expert assistance, because it is clear that the state's decision was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Because petitioner cannot prevail on this claim, the requested expert assistance is not "reasonably necessary" for this proceeding.

The Fourth Circuit has recognized that an indigent defendant has a right to the assistance of an expert, if "a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance." *Williams v. Martin*, 618 F.2d 1021, 1026 (4th Cir.1980) (quoting *Jacobs v. United States*, 350 F.2d 571, 573 (4th Cir.1965)). However, the United States Supreme Court has not directly held that there is a federal constitutional right to nonpsychiatric experts. In *Ake*, the Supreme Court case relied on by petitioner, the Court held that the state must provide an indigent defendant with a competent psychiatrist, provided the "defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial." *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). Although there was some broad language in *Ake*, which could potentially be applied to a variety of circum-

stances,[25] the precise holding was limited to the facts of that case. That case only involved a request for psychiatric expert assistance. *Id.*

The Fourth Circuit recently refused to examine a habeas claim, which was similar to Week's request for experts, under the "new rule" doctrine.[26] *Gray v. Thompson*, 58 F.3d 59 (4th Cir.1995), *vacated on other grounds*, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996). In that case, the petitioner maintained that the state court's refusal to appoint a private investigator for the defense contravened due process. *Id.* at 66. The Fourth Circuit stated that the "Supreme Court has flatly declined to address the question whether, 'as a matter of federal constitutional law[,] what if any showing would [entitle] a defendant to [private] assistance.'" *Gray*, 58 F.3d at 66 (citing *Caldwell v. Mississippi*, 472 U.S. 320, 323–324 n. 1, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)). The court went on to hold that by resolving that question, the court would clearly be breaking new constitutional ground. *Id.* at 66; *see also George v. Angelone*, 901 F.Supp. 1070, 1085 (E.D.Va.1995) (relying on *Gray* in refusing to decide the merits of habeas petitioner's claim that the trial court's failure to appoint an investigator deprived him of due process), *aff'd on other grounds*, 100 F.3d 353 (4th Cir.1996).

There is no reason to believe that the Fourth Circuit would treat a claim based on denials of ballistic and forensic experts differently than a claim based on the denial of an investigator. The Supreme Court, in *Ake*, did not refer to any non-psychiatric experts. More importantly, in *Caldwell*, the petitioner had requested the appointment of a criminal investigator, a fingerprint expert, and a ballistic expert. In that case, the Supreme Court was referring collectively to all three types of experts when it held that "there was no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type here sought." *Caldwell*, 472 U.S. at 323–24 n. 1, 105 S.Ct. 2633. At least one other circuit has held that an extension of *Ake* to other kinds of experts would create a new rule under the Supreme Court's prior holdings. *See, e.g., Jackson v. Ylst*, 921 F.2d 882, 885–86 (9th Cir.1990) (the court declined to review the merits of the claim that a denial of an expert on eyewitness identification violated due process, because it would impose a new obligation on the states in violation of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)).

Under § 2254(d), a petition for habeas can only be granted if the state's decision was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. *See infra* part III.B. Pursuant to the Fourth Circuit's decision in *Gray*, resolving Week's claim in his favor would require the court to announce a "new rule" of constitutional law in violation of *Teague*. Certainly, if such a decision is not permissible under *Teague*, it would also not be permissible under the AEDPA's more restrictive standard of review.[27] If finding for

---

**25.** "We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense." *Ake*, 470 U.S. at 76, 105 S.Ct. 1087.

**26.** Under the "new rule" doctrine, before a claim of a federal constitutional violation can be reviewed, the district court must first determine whether the relief sought would create a new rule under [the Supreme Court's] holdings. *Saffle v. Parks*, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). "If so, [the court can] neither announce nor apply the new rule ... unless it would fall into one of two narrow exceptions."

*Id.* at 486, 110 S.Ct. 1257. A "new rule" is "a rule that 'breaks new ground,' 'imposes a new obligation on the States or Federal Government,' or was not 'dictated by precedent existing at the time the defendant's conviction became final.'" *Id.* at 488, 110 S.Ct. 1257 (quoting *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)).

**27.** Petitioner asserts that the Supreme Court of Virginia never decided this claim on the merits, and that this court should therefore review the claim *de novo*, without reference to § 2254(d). However, this does not help Weeks with his claim. If § 2254(d) does not apply, the "new rule" analysis of *Teague* would apply. Whether reviewed under the *Teague* and *Gray* analysis, or under § 2254(e), the rule sought by Weeks cannot be applied to his case on habeas.

petitioner would require declaring a "new rule," such a rule could not have been clearly established federal law, as determined by the Supreme Court, at the time the state made its decision in this case.

Because this court could not find in Week's favor on his claim that he was denied due process when the trial court refused to provide expert assistance, expert assistance is not "reasonably necessary" for this proceeding.

### B. Standard of Review Under the AEDPA

The court agrees with and hereby adopts the Magistrate Judge's interpretation of the standard of review under the Antiterrorism and Effective Death Penalty Act of 1996. See R & R at 44–52. As each of petitioner's arguments, which underlie his current objections to the Magistrate Judge's interpretation of the AEDPA, were thoroughly discussed in the R & R, this court sees no reason to simply repeat petitioner's arguments as well the court's rejection of them as meritless.[28] However, for the sake of clarity, the court will briefly summarize the applicable standard of review.

The AEDPA is generally applicable to Weeks' case, because his petition was filed well after the April 24, 1996, enactment date of the Act. See Lindh v. Murphy, 521 U.S. 320, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997) (holding that the new provisions of chapter 153 generally apply to cases filed after the [AEDPA] became effective).[29] The newly amended 28 U.S.C. § 2254(d) establishes the standard of review to be applied by a federal court considering a state prisoner's petition for habeas relief. Section 2254(d) provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

■■■ A federal district court must first determine whether there is a state decision on the "merits" with respect to a particular claim. Section 2254(d) applies to any claim adjudicated on the merits in state court. Contrary to the argument advanced by petitioner, a decision by a state court that summarily dismisses a petitioner's claim as meritless is an adjudication on the merits within the meaning of § 2254(d). Hennon v. Cooper, 109 F.3d 330, 335 (7th Cir.) (holding that "perfunctory" state court rulings are nonetheless evaluated pursuant to § 2254(d) for reasonableness), cert. denied, —— U.S. ——, 118 S.Ct. 72, 139 L.Ed.2d 32 (1997); see also Parker v. Angelone, 959 F.Supp. 319, 320 (E.D.Va.1997) (decision by state court summarily dismissing petitioner's claim as "frivolous" is an "adjudication on the merits"); McLee v. Angelone, 967 F.Supp. 152 (E.D.Va. 1997) (holding that § 2254(d) does not require an explanatory decision from the state court). The statute only requires the reviewing court to examine the ultimate decisions of the state court and compare that decision to "clearly established federal law."

However, the practical significance of § 2254(d)'s new standard of review will certainly be lessened in cases where the state court offers no explanation for its decision. See Cardwell v. Netherland, 971 F.Supp. 997,

---

28. Weeks had raised the same arguments contained in his objections to the R & R in "Petitioner's Response in Opposition to Respondent's Motion to Dismiss." Petitioner raised a number of arguments regarding the applicability of the AEDPA, as well as its constitutionality.

29. The specific provision of § 107 of the AEDPA, however, is not applicable. Although § 107 contains several provisions pertaining specifically to capital defendants, these provisions are applicable only if the state meets the "opt-in" requirements set forth in § 107. As explained above, Virginia does not meet the qualifications of § 107, thus precluding its applicability to this case. See supra part I.A.

1015 (E.D.Va.1997). In cases where there is no indication of *how* the state court came to its decision, it will obviously be more difficult for the federal court to judge whether the ultimate determination *involved an unreasonable application* of federal law. As explained by the Court of Appeals for the Seventh Circuit:

> [O]f course the better the job the state court does in explaining the grounds for its rulings, the more likely those rulings are to withstand further judicial review. That is just realism. It doesn't follow that the criterion of a reasonable determination is whether it is well reasoned. It is not. It is wether the determination is at least minimally consistent with the facts and circumstances of the case.

*Hennon,* 109 F.3d at 335.

■ If there is such a qualifying state decision on the merits, the writ shall not be issued unless one of the statutory exceptions is met. Section 2254(d)(1) governs the standard of review for legal claims. A federal court may grant a petition if it finds that the state decision was contrary to clearly established federal law, or involved an unreasonable application of clearly established federal law. This section abrogates the *de novo* review that was required under *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).[30] As stated by the Magistrate Judge, "the focus of federal court review is now the state court decision that previously addressed the claims rather than the petitioner's freestanding claims themselves." R & R at 46. By changing the focus of review, the Act increases the respect due state decisions.

■ However, the review of legal claims is still *de novo* in the sense that federal courts must independently determine whether the state court decision is correct under federal law. For this reason, the AEDPA is not unconstitutional as argued by Weeks. The AEDPA does not require any state decision to be upheld where the decision is "contrary to" or is "an unreasonable application of" federal law. Thus, the Act does not eliminate the Judicial power of the federal judiciary to say what the law is, as required by Article III of the United States Constitution.

■ The AEDPA altered habeas review in a more fundamental way, by mandating a strict choice-of-law rule. In comparing the state decision to clearly established federal law, it is the law "as determined by the Supreme Court of the United States" that prevails. Federal courts are no longer permitted to rely on their own jurisprudence in addition to that of the Supreme Court. Thus, Weeks must be able to point to an authoritative decision of the Supreme Court in order to secure a writ. *See Bocian v. Godinez,* 101 F.3d 465, 471 (7th Cir.1996).

Section 2254(d)(2) dictates the standard of review applicable to claims based on pure questions of fact. When a petition for habeas relief is based on a challenge to a factual determination, before granting an application for a writ, the federal court must find that the state decision was based on an *unreasonable* determination of the facts in light of the evidence presented in state court. § 2254(d)(2). In addition, factual determinations made by a State court shall be presumed to be correct and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. § 2254(e)(1).

■ Petitioner also objects to footnote 20 of the Report and Recommendation. Weeks interprets the R & R as finding that the AEDPA supplants the harmless error standard outlined in *Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). This court does not read the Magistrate Judge's R & R the same way. The Magistrate Judge simply stated that "[u]nder pre-Act law, this petition would be decided under the standard outlined in [*Brecht* ]," which is historically a correct statement. The Judge then briefly explained why most

---

**30.** Prior to passage of the AEDPA, review was *de novo* in the strictest sense of that term. Under the *Brown v. Allen* line of cases, insofar as petitions presented questions of law or mixed questions of law and fact, federal courts were required to treat the petitions as a wholly new complaint. Federal courts were required to treat state court adjudications in the particular case as nothing more than a potentially relevant authority from the court of last resort of another jurisdiction. *Brown,* 344 U.S. at 458, 73 S.Ct. 397.

of Weeks' claims could not meet the *Brecht* harmless error standard. He never made any reference to the status of *Brecht* post-AEDPA.

However, to the extent that Weeks is correct in his interpretation of the Report and Recommendation, this court holds that there is nothing in the new law which would overrule or contradict *Brecht.* Under *Brecht,* a petitioner is not entitled to habeas relief based on trial error unless he can establish that it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* 507 U.S. at 638, 113 S.Ct. 1710; *see also Watson v. Boone,* 131 F.3d 153, 1997 WL 741165 (10th Cir.1997) (unpublished decision) (applying *Brecht* harmless error standard to trial error in case that was reviewed under AEDPA). Thus, even if Weeks shows that the state court incorrectly found a claim to be meritless, in that the decision was contrary to clearly established federal law, he must still show that the proven trial error was not harmless under the *Brecht* standard of review.

### IV. Findings of Fact and Conclusions of Law

Respondent objects to the Report & Recommendation on the ground that the Magistrate Judge erred by finding particular claims reviewable. According to the Commonwealth, Claims I, V, VII, XVIII, XIX, XX, XXII, and XXV should not be reviewed on the merits on federal habeas.

With respect to Claim I, this court has already determined that the claim is not reviewable on the merits. *See supra* part III.A. With respect to Claims V and VII, respondent maintains that Weeks failed to preserve the issue as a federal constitutional claim on direct appeal. It is clearly established law that if a habeas petitioner wishes to claim that a state trial court denied him the due process of law guaranteed by the Fourteenth Amendment, he must have said so in state court. *See Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (*per curiam*); *Matthews v. Evatt,* 105 F.3d 907, 911 (4th Cir.) (explaining that in order to preserve the right to collateral review in federal court, petitioner must have

fairly presented the substance of the federal claim to the state court), *cert. denied sub nom. Matthews v. Moore,* — U.S. —, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997).

In the present case, there is no question that the Supreme Court of Virginia was alerted to the fact that petitioner was asserting these claims under the United States Constitution, in addition to the Virginia Constitution. For each of the claims, petitioner clearly argued that the trial court's decision constituted a violation of particular provisions of the Constitution of the United States. *See* Br. of Appellant to S.Ct. of Va. at 27–29 (Assigned Error 11 & 12), 22–24 (Assigned Error 3). Accordingly, the Magistrate Judge was correct in reviewing Claims V and VII on the merits.

Respondent also argues that Claim XVIII was not raised as a constitutional issue on direct appeal. However, as with the above claims, petitioner fairly presented the claim as a federal constitutional claim to the Supreme Court of Virginia. Not only did petitioner state in his argument that his rights under the United States Constitution were violated, he also explained how the introduction of hearsay can violate a defendant's Sixth Amendment right to confrontation. *See* Br. of Appellant to S.Ct. of Va. at 41 (Assigned Error 30), 39 (Assigned Error 27, cross referenced in Assigned Error 30).

Respondent maintains that Claims XVIII, XIX, XX, XXII, and XXV raise only questions of state law, and do not rise to the level of federal constitutional claims. It is true that any error in state law or procedure that does not implicate the Constitution or laws of the United States is not reviewable on federal habeas corpus. *See* 28 U.S.C. § 2254(a) ("district court shall entertain an application for a writ of habeas corpus ... only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"). For the following reasons, each of these claims do raise federal constitutional issues.

As to Claim XVIII, respondent cites *Davis v. Greer* for the proposition that a hearsay claim is solely a state law matter, and does not raise a federal constitutional claim. 13

F.3d 1134, 1139 (7th Cir.1994). However, the court in *Davis* held that any violation of the hearsay rule at *sentencing* is a matter of state law, as the Sixth Amendment Confrontation Clause does not apply at sentencing. The Confrontation Clause certainly does apply during trials, and a violation of the hearsay rule can implicate that clause. *Id.* In this case, to the extent that the claim is only a hearsay claim, petitioner clearly argues that the admission of hearsay during *trial* violated his rights under the Constitution. Accordingly, this objection by respondent has no merit.

Similarly, respondent's objections as to the reviewability of Claims XIX and XXII are also without merit. Respondent argues that each of these claims raise evidentiary questions, which according to respondent are only state law issues. According to respondent, the Report & Recommendation "ignores the distinction between a mere error of state law and one that is so egregious as to render the trial fundamentally unfair." Respondent's Obj. to R & R at 7, ¶ 11.

However, it is clear that the violation of a state evidentiary rule can also constitute a violation of the United States Constitution. Respondent fails to realize that, once a constitutional violation is adequately alleged, in order to determine whether the error is merely one of state law or is in fact a violation of the United States Constitution, the court must review the claim on its merits. In reviewing each of the claims, the Magistrate Judge did ultimately hold that none of alleged errors were contrary to, or an unreasonable application of, federal law. As an initial matter, however, the Magistrate Judge correctly held that Weeks adequately presented the factual and legal basis of his federal constitutional claims, so that this court could review the claims on their merits.

For the same reasons, respondent's objection to the court's review of Claim XXV on the merits must also be overturned. In Claim XXV, petitioner argues that the trial court committed error by not submitting a particular instruction to the jury. Respondent argues that this claim is merely a state procedural issue. However, errors relating to jury instructions can clearly rise to the level of a due process violation, depending on the particular circumstances. The Magistrate Judge was correct in finding that Weeks adequately alleged a violation of his federal constitutional rights, so that it may be reviewed on the merits.

In addition to arguing that Claim XX only raises a state law claim, respondent argues that Claim XX is not reviewable because it goes far beyond the limited claim raised on direct appeal. First, as with the above claims, Claim XX also sufficiently alleges a federal constitutional violation. However, this court must agree with respondent's second argument. Although the headings of Assigned Error 20, the claim on direct appeal, and Claim XX are similarly worded, the Commonwealth is correct that the arguments raised under the claims are actually very different.

At trial, evidence was offered to show that the gun used by Weeks in the murder of Trooper Cavazos had also been used by another individual in an earlier murder committed in North Carolina. The evidence showed that Weeks received the gun, knowing both that it had been used in a murder, and that the police were looking for the gun. Thus, the history of the gun was not offered to show that Weeks was involved in the commission of the North Carolina murder. It was offered to show motive, intent, and knowledge in the Cavazos murder.

In Assigned Error 20, Weeks argued that there was insufficient evidence to show that Weeks was an accessory after the fact to the North Carolina murder, and thus the evidence implying as much should not have been admitted. *See* Br. of Appellant to S.Ct. of Va. at 35 (Assigned Error 20). Although present Claim XX relates to admissibility of the same evidence, different arguments are relied upon than were referred to on direct appeal. In Claim XX, petitioner argues that the evidence was irrelevant and that any probative value was outweighed by its prejudicial effect, thus violating his due process rights under the United States Constitution. Petition for a Writ at 125–31. In addition, Weeks argues that jurors received no necessary guidance, direction, or limitations on their consideration of this evidence, and that

this failure conflicts with the due process clause and the Eighth Amendment. *Id.* at 128. None of these issues or arguments were raised in the direct appeal brief. Accordingly, Claim XX was not "fairly presented" to the Supreme Court of Virginia so that the State had the requisite "opportunity to pass upon and correct alleged violations." *See Henry,* 513 U.S. at 365, 115 S.Ct. 887.

In conclusion, the Magistrate Judge's conclusion that Claims V, VII, XVIII, XIX, XXII, and XXV are reviewable on their merits was correct. However, the Magistrate Judge erred in addressing the merits of petitioner's Claim XX, which addressed the admission of evidence related to the history of the gun used in the murder. In addition, as explained earlier, the Magistrate Judge erred in addressing the merits of Claim I. *See supra* part III.A. Accordingly, this court will not address the merits of Claim I or XX, but will address the merits of Claims I, V, VII, XVIII, XIX, XXII, and XXV.

### A. Claim V

█ Petitioner objects to the Magistrate Judge's conclusion that Claim V is without merit. In Claim V, Weeks argues that he was arbitrarily and unreasonably denied his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments when he was not allowed to make an *ex parte* showing on his claim for expert assistance.

The trial judge refused to allow petitioner to make his application for a ballistics expert and forensic pathologist *ex parte.* The Supreme Court of Virginia, held that Weeks' rights were not violated by the denial of an *ex parte* hearing. *Weeks v. Commonwealth,* 248 Va. 460, 450 S.E.2d 379, 388 (1994).

Under federal criminal procedure, there is clearly a statutory right to an *ex parte* hearing. 18 U.S.C. § 3006A(e)(1). However, the United States Supreme Court has never held that there is a constitutional right to an *ex parte* hearing. In *Ake,* the Court did make a reference to an *ex parte* hearing, but the court did not hold that such a hearing is constitutionally required. *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

For these reasons, and the additional reasons stated in the Report and Recommendation, petitioner cannot show that the Supreme Court of Virginia's decision was contrary to, or an unreasonable application of, federal law. Accordingly, this claim is without merit.

### B. Claim VII

█ Petitioner objects to the Magistrate Judge's conclusion that Weeks was not entitled to a Bill of Particulars, and that the Supreme Court of Virginia did not err in upholding the trial court's decision denying Weeks' request for one. The trial court denied petitioner's request for a Bill of Particulars. The Supreme court of Virginia held that a Bill of Particulars was not required under *Strickler v. Commonwealth,* 241 Va. 482, 404 S.E.2d 227, 232–33 (1991). *See Weeks v. Commonwealth,* 248 Va. 460, 450 S.E.2d 379, 388 (1994).

Weeks makes two distinct arguments supporting his claim: (1) that the mandatory nature of Va.Code § 19.2-266.2 creates a liberty interest in receiving a Bill of Particulars, the denial of which violated his due process rights under the federal Constitution; and (2) the Sixth Amendment entitles a defendant to be informed of the nature and cause of the accusation against him. However, neither argument has merit.

The Supreme Court of Virginia has made clear that § 19.2-266.2 does not entitle a defendant to a Bill of Particulars as a matter of right. *See Quesinberry v. Commonwealth,* 241 Va. 364, 402 S.E.2d 218 (1991) (holding that whether the Commonwealth is required to file a Bill of Particulars is a matter within the discretion of the trial court); *see also Strickler,* 241 Va. 482, 404 S.E.2d 227(1991) (holding that when an indictment is sufficient to give the accused "notice of the nature and character of the offense charged so he can make his defense" a Bill of Particulars is not required). In this case, Weeks never challenged the sufficiency of the indictment. Thus, the trial court judge did not err under Virginia law in denying a Bill of Particulars, and consequently did not deny Weeks any state created liberty

interest, in violation of the due process clause.

Furthermore, there is no constitutional right to a Bill of Particulars. *United States v. Bales*, 813 F.2d 1289 (4th Cir.1987). Weeks was essentially seeking detailed discovery of all of the prosecution's evidence against him. However, he cannot point to any United States Supreme Court case in support of his theory that the denial of a Bill of Particulars was in violation of his rights under the federal Constitution.

For these reasons, and the reasons stated in the Report and Recommendation, petitioner cannot show that the Supreme Court of Virginia's decision was contrary to, or an unreasonable application of, federal law. Accordingly, this claim is without merit.

### C. Claim X

Petitioner objects to the Magistrate Judge's conclusion that Weeks cannot meet the required burden with respect to Claim X. Weeks maintains that the trial court's refusal to strike Juror Pama for cause was unreasonable, and deprived Weeks of due process, effective assistance of counsel, and a fair trial.

Juror Pama had a close relative that was shot to death in the course of his duty as a police officer. Weeks argues that Juror Pama's answers during voir dire were ambiguous, and the statements combined with the context of the questioning suggest that he could not be fair and impartial. *See* R & R at 64–65 (for relevant portions of voir dire of Juror Pama). According to petitioner, the context of the questioning by the prosecutor would have put pressure on Pama to strive to be judged "fair and impartial, laudatory attributes." Pet. Obj. at 44. In addition he argues that, "a college graduate working on a Master's degree, knew what answers he had to give to be deemed "fair and impartial." *Id.* at 45. In reviewing this claim, the Supreme Court of Virginia held that the trial court did not commit error in refusing to dismiss Pama for cause. *Weeks*, 450 S.E.2d at 389.

Although this court may have ruled differently than the trial judge if it had presided over the trial, how this court would have ruled is not the relevant standard. It is well-settled that a question of whether a member of the venire should be excluded for cause is a factual finding. *Wainwright v. Witt*, 469 U.S. 412, 429, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); *see also Patton v. Yount*, 467 U.S. 1025, 1036–37, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (holding question of individual juror's partiality is one of fact, and state court determination is entitled to presumption of correctness). Under § 2254(e)(1) a determination of a factual issue made by a state court shall be presumed to be correct. This presumption can only be overcome by clear and convincing evidence. Furthermore, the trial judge is in the unique position to directly view and evaluate a juror and this court may not substitute its own judgment upon review of the transcript. *See Maynard v. Dixon*, 943 F.2d 407 (4th Cir. 1991) (holding trial judge has wide discretion in deciding whether to excuse juror for cause and in evaluating a juror's responses, inflections, and gestures).

As pointed out by the Magistrate Judge, there was nothing inherent in Juror Pama's situation that rendered him unable to perform his duties. The trial judge found him to be credible, and believed Pama's statements that he could put aside any prior knowledge or feelings, and that he could render a fair and impartial verdict.[31] Petitioner has not rebutted by clear and convincing evidence the presumption of correctness accorded state findings of fact. For these reasons, and the reasons stated in the Report and Recommendation, Weeks cannot show that the state court's decision was based on an unreasonable determination the facts under § 2254(d)(2). Accordingly, this claim is without merit.

---

31. The fact that Juror Pama is a graduate student, and thus supposedly "knew what answers he had to give to be deemed 'fair and impartial,'" is clearly not sufficient reason to find him incredible, let alone substitute that determination of credibility for the trial judge's. There is no reason to believe that Pama had an ulterior motive to appear unbiased. More importantly, a review of Pama's answers, if anything, indicate the candor with which he was answering the questions.

#### D. Claims XI and XII

 · Petitioner objects to the Magistrate Judge's conclusion that the trial judge did not abuse its discretion in refusing particular proposed voir dire questions pertaining to the jurors' beliefs on life imprisonment and the death sentence. Weeks argues that he should have been allowed to ask two proposed questions: (1) "Do you believe that if the Defendant is sentenced to death that the sentence will be carried out?"; (2) "Do you believe that if the Defendant were sentenced to life imprisonment that he would spend the remainder of his life in prison?"

According to petitioner, these questions were necessary to determine "the possible existence of a belief which could substantially impair the performance of a juror in accordance with the instructions given to him and his oath." Petitioner's Obj. to R & R at 46. The Supreme Court of Virginia held that "the trial court did not abuse its discretion in disallowing [any of the proposed] questions because they were either improper, vague, argumentative, or nonspecific." *Weeks v. Commonwealth*, 248 Va. 460, 450 S.E.2d 379, 388 (1994).

In this case, the Supreme Court of Virginia's decision is not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. The first question was supposedly based on the principles outlined in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). In *Caldwell*, the Supreme Court held that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328–29, 105 S.Ct. 2633. In that case, the prosecutor had led the jury to believe that ultimate responsibility for the sentencing decision rested with other decision makers who would be reviewing the jury's decision.

In *Weeks'* case, there were no impermissible arguments made to the jury. *Caldwell* does not speak to the appropriateness of

questions on voir dire. In fact, the underlying assumption in *Caldwell* seems to be that sentencers normally treat their power to determine the appropriateness of death as an "awesome responsibility." *Id.* at 329, 105 S.Ct. 2633. The issue in *Caldwell* only arose because the state actively altered what would be the normal perception of jurors. In this case, there was no reason to believe that the jurors would not believe they had an "awesome responsibility."

The second question was supposedly designed to find out if jurors believed that a defendant sentenced to life imprisonment would be out within a few years. According to Weeks, a juror who believed accordingly would be more likely to impose death. He maintains that such a question is required under *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), to ensure that all jurors will be able to set aside their views, and follow the judge's instructions and their oaths.

The first and most obvious problem with counsel's argument is that the proposed question does not ask jurors if they believe that a defendant sentenced to life imprisonment will be out in a few years. The question instead asks jurors whether they believe that a defendant with a life sentence would spend the "remainder of his life in prison." This is a very different question. An answer of "no" to the proposed question does not indicate that the juror believes a prisoner will be out in only a few years. A juror could answer "no," that he does not believe such a defendant will spend the rest of his life in prison, because he believes the defendant will be eligible for parole in twenty-five years.[32] In addition, an answer of "no" to the proposed question does not necessarily mean that a juror will be more likely to impose a death sentence regardless of the mitigating evidence offered, or that such a juror would not follow the law, as instructed by the judge.

An adequate voir dire is part of the Sixth Amendment right to an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 112 S.Ct. 2222,

---

**32.** Twenty-five years is, in fact, when Weeks would have been eligible for parole if he had

been sentenced to life imprisonment.

119 L.Ed.2d 492 (1992). However, the above question is not required under *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), as claimed by petitioner, to ensure that all jurors will be able to set aside their views, and follow the judge's instructions and their oaths. The trial judge did ask members of the jury panel the following: if "the jury were to convict the defendant of capital murder, would you be able to consider voting for a sentence less than death?" Trial Tr. at 42 (Oct. 18, 1993). This question is standard in capital cases, and is designed to weed out prospective jurors whose "views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (internal citation omitted). In addition, the judge asked prospective jurors whether they "know of any reason whatsoever why you could not sit and give a fair and impartial trial to the Commonwealth and to the accused, based solely on the law which I will give you and the evidence that you will hear and see in this courtroom?" Trial Tr. at 43 (Oct. 18, 1993).

The above questions were sufficient to ensure that the jurors would be able to set aside their views, including a view that a life sentence could result in an early release from prison, and follow the judge's instructions and their oaths. For the reasons stated here and in the R & R, the decision to refuse the proposed questions was not contrary to, and did not involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court. Accordingly, this claim is without merit.

### E. Claim XIII

 Petitioner objects to the Magistrate Judge's conclusion that Claim XIII is without merit. According to Weeks, the trial judge deprived him of due process and a fair trial when he refused to allow certain proposed voir dire questions regarding racial bias. *See* R & R at 73–74 (for list of denied questions).

 Petitioner relies on *Turner v. Murray*, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986), for the argument that his proposed questions should have been allowed. It is clearly established law that Capital defendants accused of an interracial crime are entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. *Id.* at 36, 106 S.Ct. 1683. At the same time, though, the Supreme Court specifically held that the rule is "minimally intrusive; as in other cases ... the trial judge retains discretion as to the form and number of questions on the subject" of race. *Id.* The Supreme Court has indicated that even where inquiry is constitutionally required because of inextricably involved racial issues, confining the questioning to a single brief general question may be "sufficient to focus the attention of prospective jurors on any racial prejudice they might entertain." *Ham v. South Carolina*, 409 U.S. 524, 527, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973) (question "[w]ould you fairly try this case on the basis of the evidence and disregarding the defendant's race" held to be sufficient).

In this case, the trial court did allow two questions on the issue of racial bias that were much more specific than the question referred to in *Ham*: (1) Would you disapprove of a member of your family marrying a person of a different race for that reason only?; (2) Do you believe that persons of African descent are more likely to commit crimes than other persons of other races? Trial Tr. at 52 (Oct. 18, 1993). The judge used his discretion to deny the other proposed questions as open-ended, argumentative, and ineffectual. The Supreme Court of Virginia held that "the trial court did not abuse its discretion, in this case of a white victim and a black accused, in the manner which it questioned the prospective jurors on the subject of potential racial bias." *Weeks v. Commonwealth*, 248 Va. 460, 450 S.E.2d 379, 388 (1994) (citing *Turner v. Murray*, 476 U.S. 28, 37, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986) for support).

For the above reasons, and the reasons stated in the Report and Recommendation, the Supreme Court of Virginia's decision on this question was not contrary to, or an unreasonable application of, clearly estab-

lished federal law. Accordingly, this claim is without merit.

### F. Claim XIV

■ Petitioner objects to the Magistrate Judge's conclusion that Claim XIV is without merit. According to Weeks, the trial judge deprived him of due process and a fair trial when he refused to allow certain proposed voir dire questions regarding bias in favor of the death penalty. *See* R & R at 76–77 (for list of denied questions).

Petitioner relies on *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) for the argument that his proposed questions should have been allowed. In *Wainwright,* the Supreme Court held that the proper standard for determining when a prospective juror may be excused for cause because of his views on capital punishment ... is whether the juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. *Id.* at 424, 105 S.Ct. 844. Accordingly, a defendant has a right to conduct a voir dire adequate to ensure that none of the members of the jury would "unwaveringly impose death after a finding of guilt," regardless of mitigating factors and no matter how instructed on the law. *Morgan v. Illinois,* 504 U.S. 719, 733–34, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992).

The trial court did allow a number of questions that were related to the imposition of the death penalty and the possibility that a potential juror may not be able to perform his duties in accordance with the instructions and his oath. The judge, however, denied some questions as argumentative, open-ended, and without a sufficient factual basis for the prospective jurors to intelligently respond. The Supreme Court of Virginia upheld the trial judge's decision, holding that the questions were either improper, vague, argumentative, or nonspecific. *Weeks,* 450 S.E.2d at 388.

The questions that were allowed were adequate to identify those who would automatically vote for the death penalty. *See Mac-*

*kall v. Angelone,* 131 F.3d 442, 451 (4th Cir.1997) (*en banc*), *cert. denied,* — U.S. ——, 118 S.Ct. 907, 139 L.Ed.2d 922 (1998). For this reason, and the reasons stated in the Magistrate Judge's Report and Recommendation, petitioner cannot show that the decision of the Supreme Court of Virginia was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, this claim is without merit.

### G. Claim XV

Respondent and petitioner have each objected to the Magistrate Judge's analysis of Claim XV. Respondent objects to the Magistrate Judge's conclusion that the second conversation between Special Agent Rowland of the Virginia State Police and Weeks amounted to an interrogation within the meaning of *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).[33] Petitioner objects to the Magistrate Judge's conclusion that the interrogation was not a violation of Weeks' Fifth Amendment right to remain silent.

#### 1. Interrogation

■ The second conversation between Weeks and Special Agent Rowland clearly constituted an interrogation within the meaning of *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). According to the United States Supreme Court, the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *Id.* at 300–01, 100 S.Ct. 1682. The Court went on to define what is meant by the phrase "functional equivalent." This term was defined as any "words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response" from the suspect. *Id.* at 301, 100 S.Ct. 1682. This definition is intended to focus the analysis upon the perceptions of the suspect, and not the intent of the police. *Id.*

In this case, defendant was clearly in custody at the time of the second conversation with Agent Rowland. Weeks was read his

---

**33.** The Supreme Court of Virginia assumed, without deciding, that the conversation was an interrogation. *Weeks v. Commonwealth,* 248 Va. 460, 450 S.E.2d 379, 386 (1994).

*Miranda* rights at approximately 7:40 a.m. on February 24, 1993, by Officer Rowland, who had become suspicious of him during their conversation. Weeks invoked his Fifth Amendment right to remain silent, and questioning immediately ceased. At approximately 7:52 a.m., Weeks was arrested by Rowland, after he had received information that the driver of Weeks' vehicle had identified Weeks as the gunman. From that point on, Weeks remained continually in the custody of the police. At 6:00 p.m., Weeks was brought in handcuffs and leg irons, to the lounge of the local prosecutor's office where Agent Rowland again spoke with Weeks. It is this last discussion at 6:00 p.m. that is the subject of both parties' objections.

Because Weeks was clearly in custody at the time of the second conversation, the decisive question is whether he was subjected to questioning or its functional equivalent. The relevant facts surrounding the second conversation are as follows: After asking Weeks if he remembered the rights read to him earlier, Rowland proceeded to summarize the investigation through the course of the day's events to that point in time. This summary included telling Weeks that an eyewitness to the shooting had made a positive identification of him as the assailant. In fact, the truth was that a witness had identified defendant as a person she saw at the scene after the homicide, but that she had not actually witnessed the shooting. At the conclusion of this summary, Rowland told Weeks that, "[t]his is your opportunity to provide your explanation as to what happened at the shooting scene." Weeks responded by stating "Yes, I was packing." He then proceeded to confess to the trooper's murder.

The interaction between Weeks and Agent Rowland was clearly an interrogation under *Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297. Apparently, the respondent would have the court find that the final statement by Rowland was not a question, or words designed to elicit a response, simply because there is no question mark at the end of the statement. This court sees no practical difference between what was actually said and the following questions: "Will you take this opportunity to explain what happened at

the shooting scene?" or "Do you want to tell me what happened at the shooting scene?" The officer should have known that his statement, indicating that he was providing Weeks with the opportunity to explain his side, and immediately following the recitation of evidence against Weeks, was reasonably likely to elicit an incriminating response. More than likely, Officer Rowland's very intent, or at least hope, was to illicit a confession from Weeks.

The cases cited by the Commonwealth in its supporting brief are inapposite to the question of whether the above interaction constituted an interrogation. First, respondent cites *Ray v. Duckworth*, 881 F.2d 512, 518 (7th Cir.1989), for the proposition that there is nothing objectionable if an officer merely informs a suspect about the nature of the evidence against him. However, whether it is objectionable to inform a suspect about the nature of the evidence against him is not the issue. The issue is whether the officer's statements constituted an "interrogation." The issue in *Ray* was not whether there was an interrogation, but whether the interrogation that took place was coercive. *Id.* In addition, the officer did not merely inform the suspect about the nature of the evidence against him. As explained above, he misrepresented some of the evidence. A deliberately false statement indicates that the officer's intention was not simply to keep Weeks informed about matters relating to the charges against him, as respondent would have this court believe was the case here. *See* Respondent's Brief at 69.

Second, respondent cites *Shedelbower v. Estelle*, 885 F.2d 570 (9th Cir.1989), for the argument that an officer's false statement is not necessarily equivalent to an interrogation. While this may be true, a false statement is also certainly not evidence that there was not an interrogation. If anything, false statements that are deliberately made do indicate an intent to illicit an incriminating response. Although the Supreme Court held in *Innis* that the focus of the inquiry is not on the officer's intent, the officer's intent is also not irrelevant. *See Innis*, 446 U.S. at 302 n. 7, 100 S.Ct. 1682 (holding that an officer's intent "may well have a bearing on

whether the police should have known that their words or actions were reasonably likely to evoke an incriminating response").

### 2. Fifth Amendment Right

■ According to petitioner, his Fifth Amendment right to remain silent was violated when Agent Rowland interrogated him at 6:00 p.m. in the Commonwealth Attorney's lounge. The Supreme Court of Virginia held that there was no violation of *Miranda* as a result of the reinterrogation, and the trial court, therefore, did not err in refusing to suppress Weeks' statements. *Weeks,* 450 S.E.2d at 386–87.

In considering this issue on appeal, the Supreme Court of Virginia analyzed the facts of this case under the appropriate standard. *Id.* The court compared the circumstances of Week's interrogation to the five factors the United States Supreme Court had found relevant in determining that a "suspect's right to cut off questioning was scrupulously honored." *See Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

This court finds, for the reasons stated in the Report and Recommendation, that the decision of the Supreme Court of Virginia was not contrary to, or an unreasonable application of, the Supreme Court's decision in *Mosley. Id.*

### H. Claim XVI

■ The court agrees with respondent that *Stone v. Powell* bars any review of this claim on the merits. 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (holding that Fourth Amendment claims are not reviewable by federal courts on habeas petitions). However, the court disagrees with respondent that the Magistrate Judge may have suggested otherwise. Although the Magistrate Judge correctly pointed out that the claim was not procedurally *defaulted* by Weeks, he stated that "[u]nfortunately for Weeks, this claim is clearly barred under the rule in *Stone v. Powell.*" Accordingly, this objection by respondent merits no further discussion.

The petitioner objects to the Magistrate Judge's finding that the bar of *Stone* applies in this case, and to his refusal to address the merits of this claim. According to Weeks, *Stone* is inapplicable because his claim addresses the *suppression* of evidence derived from the alleged improper *Terry* stop, and not the legality of the *Terry* stop itself.

This distinction is frivolous. First, the question of whether evidence should have been suppressed obviously cannot be addressed without addressing the legality of the seizure. A review of Weeks' petition proves this point, as his discussion focuses almost entirely on trying to show that the *Terry* stop was an illegal seizure.

Second, this claim is precisely the type of claim *Stone* was addressing. The precise holding of *Stone* was that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained through an unconstitutional search or seizure was introduced at his trial." *Stone,* 428 U.S. at 494, 96 S.Ct. 3037. Weeks' claim is that the failure to suppress all evidence derived from an improperly conducted *Terry* stop deprived him of due process and a fair trial. Accordingly, *Stone* is clearly applicable to Weeks' claim.

The Magistrate Judge correctly found that *Stone* applies to this claim. Because Weeks has not shown that the state failed to provide a full and fair opportunity for litigation, this claim is barred from review on the merits.

### I. Claim XVIII

Weeks objects to the Magistrate Judge's conclusion that Claim XVIII lacks merit. Claim XVIII alleges that petitioner was denied various rights under the Constitution due to the Commonwealths' improper questioning of witness Daniels and the trial court's failure to correct those errors.

On cross-examination the defense attorney questioned Daniels as to any benefit he hoped to receive in exchange for his testimony. In response, Daniels stated that he hoped to receive protection from the state. On redirect the prosecutor asked, "why do you feel that you need protection?" To which Daniels replied, "threats have been

made against me by, we can say, Mr. Weeks' admirers." Defense counsel objected to this testimony, and the objection was overruled on the grounds that the defense "opened the door" to this testimony. The Supreme Court of Virginia held that defendant's assignment of error on this issue was without merit. *Weeks v. Commonwealth*, 248 Va. 460, 450 S.E.2d 379, 390 (1994).[34]

First, it must be noted that Daniels' statement was not hearsay. It was not offered for the truth of the matter asserted, but to explain why Daniels believed he needed protection. And to the extent that the statement may have been prejudicial to Weeks, the defense opened the door to the testimony. For this reason, and the reasons stated in the Report and Recommendation, petitioner has not shown that the Supreme Court of Virginia's decision was contrary to, or an unreasonable application of, federal law. Accordingly, this claim is without merit.

### J. Claim XIX

Petitioner objects to the Magistrate Judge's conclusion that Claim XIX lacks merit. Under Claim XIX, Weeks argues that the trial court unreasonably allowed Special Agent Rowland to testify as to Weeks' credibility and ultimate culpability, in violation of his right to a fair trial under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

During trial, Agent Rowland testified that, while interviewing Weeks, he learned that the driver of Weeks' car, Weeks' uncle, had stated that Weeks had done the shooting. The trial court, over defendant's objection, then allowed Rowland to testify that after learning this information he believed Weeks had not been telling him the truth during his interview of Weeks. The Supreme Court held that Assigned Error 20, which was based on this statement, had no merit. *Weeks*, 450 S.E.2d at 390.[35]

As explained by the Magistrate Judge, "it is clear from the transcript, and would have been clear to the jury, that Rowland was merely stating what was in his mind at the time." R & R at 90. For this reason, and the additional reasons stated in the Report and Recommendation, the petitioner has failed to show that the decision of the Supreme Court of Virginia was contrary to, or an unreasonable application of, federal law. Accordingly, this court finds that this claim is without merit.

### K. Claim XXII

Petitioner objects to the Magistrate Judge's conclusion that Claim XXII lacks merit. In Claim XXII, Weeks argues that the trial judge erred by allowing the prosecution to enter into evidence the criminal records of this former co-defendants, during the penalty phase of his trial. According to Weeks, this evidence violated his due process rights under the Constitution because the evidence was irrelevant and inflammatory.

In attempting to show future dangerousness, one of the statutory aggravating factors that can trigger a sentence of death, the Commonwealth presented evidence concerning Weeks' 1992 conviction for drug trafficking. The Commonwealth's witness, M.W. Casey, a North Carolina Detective, was allowed to testify about the records of Weeks' co-defendants in that case, over Weeks' objection. The trial court allowed the testimony to show the "background and environment" in which he operated his business. The Supreme Court of Virginia, held that this issue was without merit. *Weeks*, 450 S.E.2d at 390.[36]

The admissibility of evidence is generally a matter of state law. "Absent a showing that the admission of the evidence violated a specific constitutional guarantee, a federal court can issue a writ of habeas cor-

---

**34.** This is one of the miscellaneous evidence claims that was dismissed as meritless without any discussion by the Supreme Court of Virginia.

**35.** This is one of the miscellaneous evidence claims that was dismissed as meritless without any discussion by the Supreme Court of Virginia.

**36.** This is one of the miscellaneous evidence claims that was dismissed as meritless without any discussion by the Supreme Court of Virginia.

pus on the basis of a state court evidentiary ruling only when that ruling violated the defendant's right to due process by denying him a fundamentally fair trial." *Milone v. Camp*, 22 F.3d 693, 702 (7th Cir.1994). The petitioner has not shown that the admission of evidence was so prejudicial that it fatally affected the sentencing phase and deprived him of a fair trial. Moreover, the trial court's determination that the evidence was relevant to future dangerousness was not an unreasonable application of federal law.

For these reasons, and the reasons stated in the Report and Recommendation, petitioner has failed to show that the state court's decision was contrary to, or an unreasonable application of, federal law. Accordingly, this court finds that this claim is without merit.

### L. Claim XXV

■ Petitioner objects to the Magistrate Judge's conclusion that Claim XXV is without merit. Weeks claims that the trial court violated his due process rights and his right against cruel and usual punishment by responding inappropriately to a jury question.

During deliberations, the jury asked the following question: "Does the sentence of life imprisonment in the State of Virginia have the possibility of parole, and if so, under what conditions must be met [sic] to receive parole?" The trial court responded by telling the jury, "You should impose such punishment as you feel is just under the evidence, and within the instructions of the Court. You are not to concern yourself with what may happen afterwards." Weeks objected to this response, proposing that the court instead instruct the jury to presume that their sentence would be carried out.[37] The trial court overruled this objection. On direct appeal, the Supreme Court of Virginia denied this issue as meritless. *Weeks*, 450 S.E.2d at 390.[38]

37. The court notes that, in his objection, petitioner focuses on a different aspect of this claim: The fact that he was denied the opportunity to present his own accurate evidence regarding his ineligibility for parole for a minimum of 25 years. As explained by the Magistrate Judge, this issue was procedurally defaulted by petitioner because it was never presented to the Supreme Court of

For the reasons stated in the Report and Recommendation, petitioner cannot show that the state court decision was contrary to, or an unreasonable application of, federal law, as determined by the United States Supreme Court.

### M. Claims XXVI and XXVII

■ These claims, as well as the next two, are closely related. Each of the claims call into question whether the jury was adequately informed on the effect it could give to mitigating evidence. More specifically, petitioner maintains that the jury was mislead into believing that, if they found the presence of an aggravating factor, they did not have to consider mitigating evidence, and that they had to impose the death penalty.

In Claim XXVI, petitioner maintains that his constitutional rights were violated when the trial court refused the following proposed jury instruction: "Even if you find that the Commonwealth has proved one or both of the aggravating factors beyond a reasonable doubt, you may give effect to the evidence in mitigation by sentencing the Defendant to life in prison." In Claim XXVII, petitioner argues that his rights were further violated when the court, instead of reading Weeks, proposed instruction, gave the following instruction:

> If you find from the evidence that the Commonwealth has proved beyond a reasonable doubt, either of the two alternatives, and as to that alternative you are unanimous, then you may fix the punishment of the defendant at death; or, if you believe from all the evidence that the death penalty is not justified, then you shall fix the punishment of the defendant at life imprisonment....

> If the Commonwealth has failed to prove beyond a reasonable doubt at least one of the alternatives, then you shall fix the

Virginia. *See* R & R at 98–99. Accordingly, this particular portion of Claim XXV was not, and cannot be, addressed on the merits.

38. This is one of the miscellaneous evidence claims that was dismissed as meritless without any discussion by the Supreme Court of Virginia.

punishment of the defendant at life imprisonment....

According to Weeks, a juror reading the first clause, of the first paragraph, might believe that he could impose the death penalty upon a finding of an aggravating factor, without having to consider any evidence in mitigation. *See Penry v. Lynaugh,* 492 U.S. 302, 317–18, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989) (a sentencer may not be precluded from considering, and may not refuse to consider any constitutionally relevant mitigating evidence). Weeks also maintains that the word "or," combined with the language of the second clause, could lead a juror to believe that he could not sentence Weeks to life imprisonment once the jury found an aggravating factor. This interpretation is possible if a juror understood the words "is not justified" to mean that the defendant is not eligible for the death penalty. *See Buchanan v. Angelone,* —— U.S. ——, —— – ——, 118 S.Ct. 757, 764–65, 139 L.Ed.2d 702 (1998) (Breyer, J., dissenting).

■ Weeks' proposed jury instruction is certainly a clearer statement of the law than the instruction actually given to the jury. However, the issue is whether the instruction given was unconstitutional, not whether alternative instructions would have been better. The governing principle is that restrictions on the jury's sentencing determination must not preclude the jury from being able to give effect to mitigating evidence. *See Buchanan,* —— U.S. at ——, 118 S.Ct. at 761. The standard for determining whether jury instructions satisfy this principle is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Id.* (citing *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

The Supreme Court has just recently applied the above standard to the very jury instruction at issue in this case. *See Buchanan,* —— U.S. ——, 118 S.Ct. 757, 139 L.Ed.2d 702. The precise issue advanced to the Supreme Court, in *Buchanan,* was whether the absence of a general instruction on the concept of mitigation, and of instructions on particular statutorily defined mitigating factors, violated the Eighth and Fourteenth Amendments to the United States Constitution. *Id.* Thus, the respondent, in this case, was technically correct in pointing out that the Supreme Court did not grant the petition for writ of certiorari on the precise questions at issue before this court.

However, in deciding whether the absence of the requested mitigation instructions violated Buchanan's rights under the Constitution, the Court focused on the instruction that was given to determine if that instruction satisfied the requirements under the constitution. *Id.* 118 S.Ct. at 762–63. The instruction that was given in Buchanan's trial is the same Virginia capital pattern sentencing instruction that was given in Week's trial.

The Supreme Court specifically held that the instruction did not violate any constitutional principles, and that it did not foreclose the jury's consideration of any mitigating evidence. *Buchanan,* —— U.S. at ——, 118 S.Ct. at 762. The Court further held, in pertinent part:

> The instruction informed the jurors that if they found the aggravating factor proved beyond a reasonable doubt then they "may fix" the penalty at death, but directed that if they believed that all the evidence justified a lesser sentence then they "shall" impose a life sentence. The jury was thus allowed to impose a life sentence even if it found the aggravating factor proved.

*Id.* 118 S.Ct. at 762.[39] In addition, the Supreme Court denied the argument that

**39.** It should be noted that the precise question at issue in this case was not raised before the Supreme Court until oral argument in the *Buchanan* case. *Id.* 118 S.Ct. at 762 n. 4. At trial both Buchanan and the Commonwealth agreed that the court should instruct the jury with Virginia's pattern capital sentencing instruction, the same instruction given in this case. Although the defense had requested several additional jury instructions on particular mitigating factors, he did not object to the instruction given. The claim raised here was also never raised prior to oral argument in the Supreme Court proceedings. Accordingly, the precise claim raised here was clearly waived by Buchanan, as pointed out by the Supreme Court. *Id.* However, regardless of whether Buchanan had technically waived the

Eighth Amendment requires the court to instruct the jury on its obligation and authority to consider mitigating evidence. *Id.* 118 S.Ct. at 761.

Pursuant to the Supreme Court's holding in *Buchanan*, this court has no choice but to hold that the trial court did not err by giving the instruction in question to the jury. Furthermore, as the given instruction was sufficient under the Constitution, Weeks' proposed jury instruction was unnecessary. Thus, the trial court did not err by refusing the proposed instruction. For these reasons, petitioner has not shown that the decision of the Supreme Court of Virginia was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, this court denies both claims.

### N. Claim XXVIII

■ Petitioner objects to the Magistrate Judge's conclusion that Claim XXVIII has no merit. This claim is closely related to, although different from, Claims XXVI and XXVII. In this claim, Weeks argues that when the jurors asked whether they could sentence Weeks to life in prison even if they find a statutory aggravating factor, the trial court erred by simply referring them to the jury instruction they had already been given. Weeks maintains that in the face of actual confusion by the jurors, the trial court had a duty to clarify its prior instruction.

The jury question read as follows:

If we believe that Lonnie Weeks, Jr., is guilty of at least one of the aggravating alternatives, then is it our duty as a jury to *issue* the death penalty? Or, must we decide (even though he is guilty of one of the alternatives) whether or not to issue the death penalty or one of the life sentences? What is the rule? Please clarify.

Over Weeks' objection, the trial judge responded by simply referring the jury to the instruction that had already been given to them, the same instruction discussed above in regard to Claims XXVI and XXVII. On appeal, the Supreme Court of Virginia held

issue, the Supreme Court did ultimately rule on the claim.

that this claim had no merit. *Weeks*, 450 S.E.2d at 390.[40]

The Magistrate Judge found that "[b]ecause this Court has already held that this jury instruction was constitutionally sufficient ... the trial judge did not err in referring the jury to the same instruction when the question arose." R & R at 109. The trial judge could have reasonably assumed that the jury members would understand their charge if their attention were brought to the specific instruction that governed their question. It is further reasonable to assume that if a second reading of the passage failed to clear up the jury's question, the jury would have issued another question. In this case, the jury did not issue any additional questions, which indicates that they understood the instruction and the governing law, once their attention was brought to the applicable instruction.

Accordingly, the petitioner has failed to show that the decision of the Supreme Court of Virginia was contrary to, or an unreasonable application of, federal law. Thus, this court finds that this claim is without merit.

### O. Claim XXIX

To the extent that this claim consists of an argument that the trial judge misapplied Va. Code § 19.2–264.5, that portion of the claim is not reviewable here, as it is a question of state law. The other portion of the claim is that the trial judge erred by not imposing a sentence of life imprisonment because the jury clearly did not understand the law in selecting the appropriate sentence. Petitioner bases this claim on his argument that the Virginia pattern capital jury instruction was unconstitutional and that the jury indicated they did not understand the law. This claim has been adequately addressed in the two previous sections.

For the reasons stated previously, as well as the reasons stated in the Report and Recommendation, petitioner has not shown that the decision of the Supreme Court of

**40.** This is one of the miscellaneous jury instruction claims that was dismissed as meritless without any discussion by the Supreme Court of Virginia.

Virginia was contrary to, or an unreasonable application of, federal law. Accordingly, this court finds that this claim is without merit.

### P. Claim XXXIV

Weeks objects to the Magistrate Judge's recommendation that Claim XXXIV is without merit. Claim XXXIV states that the imposition of the death penalty against Weeks was arbitrary and capricious and violated Weeks' rights under the constitution. According to petitioner, "the combination of errors which pervade Mr. Weeks' trial make the imposition arbitrary and capricious."

For the reasons stated in the Report and Recommendation, and based on this court's determination of the petitioner's various individual claims, the court finds that this claim is without merit.

### Q. Recommendation on Certificate of Appealability

The Magistrate Judge recommended that this Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. Petitioner objects to this recommendation. Weeks first points out that he has not yet applied to the district court for a certificate of appealability as to any issue. He further maintains that, under 28 U.S.C. § 2253(c), unsuccessful habeas petitioners are required to request such certificates from the Court of Appeals, and not the District Courts.

Petitioner's second argument points out the dichotomy between the Fed.R.App.P. 22(b) and 28 U.S.C. § 2253(c) Rule 22(b) states, in pertinent part:

> In a habeas corpus proceeding in which the detention complained of arises out of process issued by State court, appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of appealability pursuant to section 2253(c) of title 28, United States Code.

However, 28 U.S.C. § 2253(c)(1) states, in pertinent part:

> Unless a *circuit justice or judge* issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . .

(emphasis added).

Although both provisions were amended on April 24, 1996, pursuant to the AEDPA, the language of Rule 22(b) no longer tracks the language of § 2253. Prior to the changes, § 2253 provided that "an appeal may not be taken . . . *unless the judge who rendered the order in the habeas corpus proceeding*, or a circuit justice or judge, issues a certificate of probable cause." (emphasis added). The amendment in 1996 took out the reference to the district court judge who rendered the order. However, the only change made to Rule 22(b) was the replacement of the phrase "certificate of probable cause" with the phrase "certificate of appealability."

Although the Fourth Circuit has not yet addressed this issue, at least two Circuits have, concluding that Congress did intend for district court judges to have continued authority to issue certificates of appealability, under the Antiterrorism and Effective Death Penalty Act (AEDPA). *See, e.g., Houchin v. Zavaras*, 107 F.3d 1465 (10th Cir.1997); *Hunter v. United States*, 101 F.3d 1565, 1577–83 (11th Cir.1996). Both courts found that the word "circuit" in § 2253 only modifies "justice," and not "judge," which would in turn include both district judges and circuit judges. *Id.*

This court, however, declines to decide this issue, as it is not yet ripe. Until petitioner applies to this court for a certificate of appealability, this court will not determine whether it has the authority to issue such a certificate.

### Conclusion

The court, having examined the objections to the Magistrate Judge's Report, and having reviewed the record and made *de novo* findings with respect to the portions objected to, does hereby ORDER that the petition be DENIED AND DISMISSED in its entirety, and that respondent's Motion for Summary Judgment be GRANTED.

The Clerk shall mail a copy of this order to counsel for petitioner and respondent.

It is so ORDERED.

### *MEMORANDUM OPINION AND ORDER*

This matter is before the court on petitioner's motion to alter or amend judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. For the reasons set forth below, this motion is DENIED.

On April 1, 1998, this court issued its Opinion and Final Order in this case, granting respondent's motion for summary judgment and dismissing Weeks' petition for a writ of habeas corpus. On April 15, 1998, petitioner filed a motion to alter or amend judgment. Respondent responded in opposition to petitioner's motion on April 24, 1998. On May 1, 1998, petitioner filed a reply brief in support of his motion to alter or amend judgment.

According to petitioner, this court's Opinion and Final Order contains a factual error that prompted an incorrect determination of governing law, and which bears upon the court's resolution of the motion for summary judgment. Specifically, petitioner contends that this court committed a factual error in rejecting Claim VII of his federal habeas petition. He alternatively argues that this court committed a legal error in its application of Virginia law to the facts of this case.

Under Rule 59(e) of the Federal Rules of Civil Procedure, a district court may "rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 450, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). The Fourth Circuit Court of Appeals has held that Rule 59(e) permits a court to amend a judgment for three reasons: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Equal Employment Opportunity Comm'n v. Lockheed Martin Corp., Aero & Naval Systems*, 116 F.3d 110, 112 (4th Cir. 1997).

The court finds that there has been no error as to either the facts or the final deci-sion to dismiss Weeks' petition. Accordingly, the court DENIES petitioner's motion to amend or alter the court's judgment. The court will, however, clarify its reasons for finding that Claim VII is without merit.

On June 7, 1993, petitioner filed his initial motion for a bill of particulars. The trial court denied the request. On October 1, 1993, Weeks filed a renewed motion for a bill of particulars, pursuant to the provisions of Virginia Code § 19.2–266.2. This renewed motion was filed simultaneously with two pre-trial motions to suppress evidence. The renewed motion specifically sought disclosure of particulars relevant to his suppression motions.

Section 19.2–266.2 of the Virginia Code provides a deadline for filing motions or objections seeking the suppression of evidence or the dismissal of a warrant, information, or indictment. The statute also provides that "[t]o assist the defense in filing such motions or objections in a timely manner, the trial court shall, upon motion of the defendant, direct the Commonwealth to file a bill of particulars pursuant to § 19.2–230." Weeks made two distinct arguments supporting his claim that the trial court erred in denying his motions for a bill of particulars. Only one, however, is relevant to this motion to amend or alter judgment: that the mandatory nature of Va.Code § 19.2–266.2 creates a liberty interest in receiving a bill of particulars, the denial of which violated his due process rights under the federal Constitution.

In recommending that this claim is without merit, the Magistrate Judge found that Va. Code § 19.2–266.2 cannot be construed to provide an absolute right to a detailed bill of particulars in every case. This decision was based on the fact that the statute does not mandate that the bill of particulars contain every detail, or any particular details of the case, and if a defendant finds that a bill of particulars is inadequate, he must show "good cause" in order for the court to order supplementation. The Magistrate Judge concluded that the requirement of a bill of particulars is thus, in essence, in the discretion of the court.

There are additional reasons, however, for holding that the decision to order a bill of particulars is discretionary. Petitioner maintains that the Virginia cases cited by this court[1] only apply to requests made under Va.Code § 19.2–230, which has discretionary language, and not § 19.2–266.2. Section 19.2–230 provides that a court of record *may* direct the filing of a bill of particulars at any time before trial. However, the Supreme Court of Virginia has never held that a bill of particulars is mandatory when requested under § 19.2–266.2. In Weeks' case, the Supreme Court of Virginia found that the trial court had committed no error with respect to both requests for bills of particulars. *Weeks v. Commonwealth*, 248 Va. 460, 450 S.E.2d 379, 388 (1994).

Petitioner focuses on the word "shall" in § 19.2–266.2. The statute, though, also provides that a bill of particulars is to be directed *"pursuant to* § 19.2–230." There is no debate that a bill of particulars under § 19.2–230 is discretionary. Accordingly, it is reasonable to interpret § 19.2–266.2 as requiring a trial court to order a bill of particulars, if, in its discretion, the trial court finds it necessary to assist the defense in filing suppression motions.

■ However, even if a trial court must order the government to file a bill of particulars in all cases in which one is requested pursuant to § 19.2–266.2, it is only a violation of state law not to do so. It is not the deprivation of a constitutional right, nor is it a violation of any federal law. There is no federal constitutional right to a bill of particulars. *United States v. Bales*, 813 F.2d 1289 (4th Cir.1987) (holding that the granting of one is within the sound discretion of the trial judge).

Petitioner does not deny that there is no general constitutional right to a bill of particulars. He instead argues that the language of § 19.2–266.2 creates a liberty interest that is protected by the due process clause of the Fourteenth Amendment. According to petitioner, he had a vested right to receive a bill of particulars related to suppression "which cannot be deprived absent due process." Pet's Br. at 7. This claim is wholly without merit. Petitioner cites to no Supreme Court cases which support his argument that a state created right to a bill of particulars is the kind of "state-created liberty interest" protected by the Due Process Clause of the Fourteenth Amendment.

The cases relied on by petitioner, *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), and *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), pertain only to state-created liberty interests in the prison context. Moreover, both cases have been overruled in large part by a recent Supreme Court decision. *See Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In *Sandin*, the Supreme Court held that while states may create liberty interests which are protected by the Due Process Clause, those interests will be generally limited to freedom from restraint that imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293.[2] In addition, all of these cases deal with the question of when procedural due process is owed a prisoner.[3]

---

1. See *Quesinberry v. Commonwealth*, 241 Va. 364, 402 S.E.2d 218 (1991) (holding that whether the Commonwealth is required to file a bill of particulars is a matter within the discretion of the trial court); *Strickler v. Commonwealth*, 241 Va. 482, 404 S.E.2d 227 (1991) (holding that when an indictment is sufficient to give the accused "notice of the nature and character of the offense charged so he can make his defense" a bill of particulars is not required).

2. Under prior case law, a prison inmate only had to point to mandatory language and substantive predicates, in a state statute or regulation pertaining to prisoners, to establish that the state created a constitutionally protected liberty interest. See *Hewitt v. Helms*, 459 U.S. 460, 470–72, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983).

3. There is no question that petitioner was afforded *procedural* due process, even assuming that the state statute creates a liberty interest, as he was afforded a hearing on the merits of his motion for a bill of particulars. Procedural due process simply ensures that government entities grant individuals the proper procedure, usually notice and an opportunity to be heard, before depriving them of a protected property or liberty interest. See *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84

For the above reasons, the Supreme Court of Virginia's decision regarding the requests for a bill of particulars was not "contrary to," nor did it involve "an unreasonable application of", clearly established federal law, as determined by the Supreme Court of the United States.[4] Accordingly, the court DENIES petitioner's motion to amend or alter judgment in this case.

The Clerk is DIRECTED to send a copy of this Memorandum Opinion and Order to counsel for petitioner and respondent.

It is so ORDERED.

L.Ed.2d 494 (1985). What petitioner seems to be arguing is that the state statute has created a liberty interest protected by *substantive* due process.

4. Moreover, even if the trial court was in error, petitioner cannot meet the *Brecht* harmless error standard. *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (holding that a petitioner is not entitled to habeas relief based on a trial error unless he can establish that it had a "substantial and injurious effect or influ-

ence in determining the jury's verdict"). A review of the record in this case makes clear that, even if the court erred, the error did not have a substantial and injurious effect on the trial process. This is particularly true because most of the requested particulars were within Weeks' own personal knowledge.